## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| JOHN BROOKS and GREGORY SIMMONS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1334 |
| | ) | |
| CITY OF PEKIN, JOHN DOSSEY, | ) | |
| DONALD BAXTER, SARAH NEWCOMB, | ) | **Plaintiffs demand trial** |
| AND JENNIFER MELTON, | ) | **by jury** |
| | ) | |
| Defendants. | ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs, JOHN BROOKS AND GREGORY SIMMONS, by and through their attorneys, JULIE L. GALASSI, DUSTIN R. JENSEN and HASSELBERG, ROCK, BELL & KUPPLER, LLP, and JAMES L. HAFELE OF KAVANAGH, SCULLY, SUDOW, WHITE & FREDERICK, states the following for their RESPONSE TO DEFENDANTS' MOTION TO DISMISS:

A. **Defendants' Motion is replete with statements disputing the allegations in Plaintiffs' Complaint and should be disregarded by the Court.**

Defendants' Motion to Dismiss repeatedly fails to adhere to the requirements for a 12(b)(6) motion, namely, that the Complaint must be construed in the light most favorable to the Plaintiff, accepting well-pleaded facts as true and drawing all inferences in the Plaintiff's favor. *Tamayo v. Blagoveich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Instead, Defendants' motion constitutes a hybrid between a motion to dismiss pursuant to Rule 12(b)(6) and a summary judgment motion under Rule 56, as it asserts "facts" disputing the allegations in Plaintiffs' Complaint without the

1

evidentiary support that is required to support a motion for summary judgment. Based on the foregoing, the Court should disregard the portions of Defendants' motion described below when deciding the pending motion.

**Improper alleged facts contained in Defendants' Introduction and Background that disregard the well-pleaded facts of Plaintiffs' Complaint or draw reasonable inferences in favor of Plaintiffs.**

1.      Defendants state that "[o]n March 3, 2017, Pekin Police Officer Gregory Simmons made a lewd and inappropriate comment about a female officer's breasts to the female officer and her husband and a few weeks later, Simmons did it again." Doc. 18, ¶1.

Plaintiffs' Complaint (the "Complaint") alleges Simmons was under formal investigation for a <u>false</u> allegation that he had commented about Melton's breasts on March 25, 2017, and a brand-new <u>false</u> allegation that he had commented about her breasts on March 3, 2017, in the presence of her husband and other officers. Doc. 17, ¶53.

2.      Defendants state "[t]his time, Simmons made the comment to a member of the public, in the presence of the female officer and another Pekin Police Officer, while Simmons made hand gestures about the size of the female officer's breasts." Doc. 18, ¶1.

The Complaint alleges "Simmons adamantly denied making any comments about Melton's breasts. Another officer who was present...corroborated Simmons' statements." Doc. 17, ¶46. The Complaint makes no reference to "hand gestures about the size of the female officer's breasts."

3.    Defendants state that "[w]hen the female officer reported Simmons' conduct, Pekin Police Officer John Brooks was tasked with an internal investigation of the allegations against Simmons." Doc. 18, ¶1.

The Complaint alleges that as of May 2017 Brooks was ordered to investigate Simmons' alleged March 25 breast statement and counsel Simmons. The investigation was closed, because another officer contradicted Melton's claim.  Doc. 17 ¶¶45, 50, 53.

4.    Defendants state "[t]he Pekin Police Department (the "Department") soon discovered that Brooks may have been attempting to cover up the female officer's complaints because of his friendship with Simmons. Doc. 18, ¶2.

The Complaint contains no such allegation.

5.    Defendants state that "Brooks was removed from the investigation." Doc. 18, ¶2.

The Complaint alleges that, after Brooks told Defendants Dossey and Baxter that the officer present on March 25 corroborated Simmons' account, Brooks was told to take no further action because Melton's complaint was no big deal. Brooks advised Simmons the Complaint was unfounded and closed. The following day Dossey and Baxter had Melton resubmit her complaint and they started a formal investigation. Doc. 17 ¶¶50, 51, 53.

6.    Defendants state that "[b]ecause the female officer notified the City of Pekin's (the "City") Human Resources department that she was concerned Brooks

would retaliate against her while he supervised her during first shift, Brooks was removed to second shift." Doc. 18, ¶2.

The Complaint makes no allegation regarding a female officer contacting Human Resources.

7.    Defendants state that "[a]fter he was moved to second shift, Brooks claimed he suffered from sleep apnea and demanded he work first shift only, refusing all other reasonable accommodations provided to him." Doc. 18, ¶2.

The Complaint alleges that Pekin had long-term knowledge that Brooks could not work second shift due to sleep apnea and he requested to remain on first shift. Doc. 17, ¶¶59, 60. Further, though not contained in the Complaint, the claim that Brooks refused all other accommodations is false. Brooks and his attorney met with Pekin officials and agreed to their proposed accommodation of returning home during his shift and taking a nap. When it became clear that returning home for naps during his shift could not accommodate Brooks' disability, Brooks submitted another report from his sleep apnea doctor.  In response, Pekin's counsel informed Brooks that he would never work first shift as an accommodation.

8.    Defendants state that "[t]he internal investigation that was started to determine the validity of the female officer's complaints led to an investigation into Simmons and Brooks' attempts to obstruct that investigation." Doc. 18, ¶2.

The Complaint makes no allegations about an investigation over attempts to obstruct justice.

9.     Defendants state that "[t]he Department discovered numerous, disturbing violations of Pekin Police Department policies by both Simmons and Brooks." Doc. 18, ¶2.

The Complaint denies violations of Pekin Department policies including any allegation that the Department discovered violations of policies. Doc. 17, ¶¶46,67,74.

10.     Defendants state that "[o]n at least eight known occasions, Simmons surreptitiously used a personal recording device to record audio of other Department personnel without their knowledge or permission, presumably as part of his scheme to concoct a defense to the investigation or retaliate against the Department for the investigation." Doc. 18, ¶2.

The foregoing allegations are not contained in the Complaint.

11.     Defendants state that "Simmons was told not to speak with anyone about the investigation, but he disobeyed that order and instead contacted Brooks to set up defenses to the investigation." Doc. 18, ¶2.

The Complaint alleges that Simmons contacted Brooks because he was confused.  He had just been notified he was under investigation for a charge that had been closed as unfounded and how could he comply with Baxter's order. Brooks, Simmons' supervisor, said he would talk to Baxter. Doc. 17, ¶¶53, 55, 75, 77. The Complaint contains no allegations that Simmons disobeyed an order or that his purpose in contacting Brooks was to "set up defenses." Doc. 18, ¶2.

12.     Defendants state that "Simmons then lied about his contact with Brooks during the investigation." Doc. 18, ¶2.

The Complaint alleges that Simmons admitted he spoke to Brooks and did not lie. Doc. 17, ¶74.

13.    Defendants state that "[m]eanwhile, Brooks impermissibly pressured officers he supervised to support him in the internal investigation, while openly attacking the Department's command." Doc. 18, ¶2.

The Complaint makes no allegations supporting the foregoing statement. See ¶¶62- 64, 66-68.

### Improper alleged facts contained in Defendants' Response to Count I.

14.    Defendants state that "Brooks concocted the accommodation request to force himself back onto first shift after the Department had to move him from first shift to get him away from the female officer who feared Brooks' retaliation after he appeared to ignore or cover-up wrongdoing when investigating her complaints against Simmons." Doc. 18, ¶6.

The Complaint alleges that Pekin had long been aware of Brooks' inability to work second shift, aware of his disability and were provided a doctor's report that first shift work was the accommodation needed for his sleep apnea. Further, Brooks was ordered to end the investigation over Melton's complaint about the alleged incident of March 25, not to question a witness Melton named, and "not to make it a big deal." Doc. 17, ¶¶50, 59, 60-63, 90.

<u>Improper alleged facts contained in Defendants' Response to Count V.</u>

15.    Defendants state that "[t]he only alleged complaints of sexual harassment that Simmons points to are two solitary incidents in which another male officer asked him if he was having sex with his girlfriend." Doc. 18, ¶10.

The Complaint alleges that Simmons' complaints to his superiors were ignored so he went to the City Manager which resulted in Burris' loss of two personal days. Burris continued to make offensive comments to Simmons and did so again during a shift brief in front of other officers. Doc. 17, ¶¶25, 27, 28, 30, 31 and 32. Defendants improperly infer Burris' conduct can be characterized as one question about Simmons' sex with his girlfriend.

<u>Improper alleged facts contained in Defendants' Response to Count IX.</u>

16.    Defendants state that "[t]he nature of Melton's actions were complaining about Simmons and her fear that Brooks was going to retaliate against her." Doc. 18, ¶14.

The Complaint alleges that Melton did not want to work with Brooks, didn't like him, lied about his actions and expressly stated she wanted him disciplined because of Burris. Melton lied about Simmons commenting about her breasts on March 25. The day after Dossey and Baxter instructed Brooks that Simmons was not to be disciplined, they asked Melton to resubmit her false complaint against Simmons adding a new false charge. Doc. 17, ¶¶38, 40, 42, 50, 51, 53, 57.

17.    Defendants state that "[w]hile Melton's complaint about Simmons may have started the process, it was the extensive investigation into Brooks' numerous

impermissible actions that caused the Chief of Police to request his termination." Doc. 18, ¶14.

The Complaint makes no allegations that Brooks did anything impermissible. Instead, it points out that Dossey filed a complaint alleging bad conduct on Brooks' part. Doc. 17, ¶70. At this stage, Defendants cannot argue before the Court that Dossey's allegations are true or that they were the reason for the filing of Dossey's complaint.

### Improper alleged facts contained in Defendants' Response to Count X.

18.     Defendants state that "[t]o claim that Melton is the cause of the loss of (Simmons') employment, when there was a sweeping investigation into his conduct beyond the comments he made to Melton, if highly dubious." Doc. 18, ¶15.

The Complaint expressly states that Simmons was fired because of Melton's false accusations. Doc. 17, ¶¶77, 81. None of the facts pleaded in the Complaint can lead to the inference of a "sweeping investigation" into Simmons' conduct, especially when construed in favor of Plaintiffs (as is required for a Rule 12(b)(6) motion).

19.     Defendants state that "[o]nce again, if Simmons can sue Melton for reporting his lewd and inappropriate conduct, which the Commission's investigation found to be true, it will chill all such reporting." Doc. 18, ¶15.

The Complaint alleges Melton's reports of lewd statements were false. Doc. 17, ¶53.

<u>Improper alleged facts contained in Defendants' Response to Count XI.</u>

20.     Defendants state that "[m]oreover, Simmons does not allege he is a retiree qualified to receive such health insurance premiums and Simmons is not a retiree." Doc. 18, ¶16.

The Complaint alleges that Simmons submitted his retirement benefit application, is receiving those benefits, and Pekin is denying him health benefits due any retiree as required by the collective bargaining agreement. Doc. 17, ¶¶83-85.

B. <u>Argument.</u>

1.     <u>Count I properly pleads a failure to accommodate Brooks' known disability in violation of the ADA.</u>

"To state a claim for failure to accommodate, a complaint must allege that: (1) the plaintiff is a qualified individual with a disability, (2) the employer was aware of her disability, and (3) the employer failed to reasonably accommodate the disability." *Compliment v. Sanofi-Aventis US, Inc.*, 2017 WL 4074630, p. 4 (S.D. Ind. 2017) *citing Curtis v. Costco Wholesale Corp.*, 807 F. 3d 849, 853 (7th Cir. 2015). Defendants argue that Brooks fails to plead a failure to accommodate, because (a) the complaint allegedly fails to plead Brooks has a disability; (b) Brooks does not allege that he asked for an accommodation or that he was refused an accommodation; and (c) that his request for an accommodation defeats his claim. Defendants' arguments lack merit.

a. Brooks sufficiently pleads a disability.

Under the ADA, a plaintiff satisfies the requirement that he has a disability by "showing that: (1) he has a physical impairment that substantially limits one or more major life activities; (2) he has a record of such an impairment; or (3) he is regarded as having such an impairment by his employer." *Tate v. Ancell*, 551 Fed. Appx. 877, 884 (7th Cir. 2014). Brooks' complaint alleges disability under all three definitions.

Sleep apnea can constitute a disability under the ADA if it imposes a substantial limit on the major life activity of working. *Id.*, at 885. Brooks alleges that his sleep apnea prevented him from working second shift. Doc. 17, ¶59. The foregoing allegations sufficiently alleges a disability, because it alleges facts that make it plausible that Brooks sleep apnea was a physical impairment that substantially limited the major life activity of working.

Brooks also alleges that Defendants had "long-term knowledge that Brooks could not physically work second shift due to his severe sleep apnea condition." Doc. 17, ¶59. These allegations allege that it is plausible that Defendant had a record of Brooks' physical impairment that substantially limited the major life activity of working and that it regarded Brooks as having such an impairment.

b. Brooks alleges that he asked for an accommodation and that he was refused an accommodation.

Initially, Brooks points out that requesting an accommodation is not a necessary element of a failure to accommodate claim. Regardless, Brooks alleges that after being informed he would be transferred to second shift, Brooks filed a

request for an ADA accommodation. He also alleges that Defendants denied the request. Doc. 17, ¶60. Indeed, when read together, allegations 59 and 60 establish how Defendants failed to accommodate Brooks disability. Paragraphs 59 and 60 establish that Brooks needed the accommodation of working first shift to prevent his sleep apnea from substantially limiting his ability to perform the major life activity of working, and Defendants, with knowledge of Brooks' sleep apnea's substantial limitation on his ability to work second shift, made him work second shift anyway. The foregoing allegations set forth facts making it plausible that Defendants failed to accommodate Brooks' disability and giving them notice of the claims against them. As such, Defendants' motion is improper.

   c. Assuming *arguendo* that Defendants properly attach Brooks' request for an accommodation to their motion, it does not defeat the *prima facie* allegations of Brooks' failure to accommodate claim contained in his complaint.

"An employee begins the accommodation process by notifying her employer of her disability, 'at that point an employer's liability is triggered for failure to provide accommodations.'" *Spurling v. C & M Fine Pack, Inc.,* 739 F. 3d 1055, 1061 (7th Cir. 2014). "Where notice is ambiguous as to the precise nature of the disability or desired accommodation, but it is sufficient to notify the employer that the employee may have a disability that requires accommodation, the employer must ask for clarification." *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F. 3d 789, 804 (7th Cir. 2005).

In the present case, Brooks alleged that Defendants had "long-term knowledge that Brooks could not physically work second shift due to his severe

11

sleep apnea condition." Doc. 17, ¶59. The foregoing triggers Defendants' liability regardless of what Brooks put in his accommodation request. Indeed, under *Sears*, if Defendant felt that Brooks' accommodation request suggested that it did not need to accommodate his sleep apnea, they had a duty to ask for clarification, not assign him to the shift that his disability prevented him from performing.

Furthermore, the portions of the accommodation request form that Defendants focus on do not have the effect argued for by Defendants. The fact that Brooks indicated that he had no limitations at the time he made his request, i.e. before his reassignment to second shift took place. In no way affects his claim that his disability substantially limited his ability to work by precluding second shift work. Furthermore, the fact that, as Defendants state it, Brooks put "[h]is 'seniority [as] a disability or limitation..." (Doc. 18, pg. 6) exhibits a misunderstanding of the question by Brooks. It does not relieve Defendants of their duty to accommodate. Rather, it placed a duty on Defendants to ask for clarification under *Sears*.

2.  <u>Count II properly pleads a failure to accommodate Brooks' known disability in violation of the ADA.</u>

Defendants ask the Court to dismiss Count II because Brooks allegedly fails to plead he has a disability under Count I and he pleads no facts to plausibly claim there was any animus toward sleep apnea. Defendants' first argument fails for the reasons stated in Paragraph 1.

Defendants' second argument ignores established law on pleading an employment discrimination case. Even after *Iqbal* and *Twombly*, "[t]he pleading requirement for employment-discrimination claims is minimal. A plaintiff need only

identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017) (citing cases establishing that the foregoing standard survived *Iqbal* and *Twombley*). Count II satisfies this standard.

3.   <u>Count III properly pleads a retaliation claim under the ADA.</u>

Defendants ask the Court to dismiss Count III for the reasons stated with respect to Count I and II. In turn, Brooks requests that the Court deny the motion to dismiss Count III for the reasons stated in response to Defendants' motion with respect to Counts I and II. Further, Plaintiffs concede that *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 966 (7th Cir. 2004) precludes the recovery of compensatory damages or a jury trial on an ADA retaliation claim and withdraws their request for both with respect to Count III only.

4.   <u>Count IV properly pleads retaliation in violation of Title VII.</u>

A plaintiff claiming discriminatory retaliation under Title VII need only allege that "she engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th. Cir. 2014).

Brooks alleges that on March 12, 2018, he filed a charge of discriminatory retaliation based upon his participation in the investigation of Melton's sexual harassment claims. Doc. 17, ¶68.  Brooks opposed the request he discipline Simmons over Melton's first complaint. Brooks advised his superiors that he did not believe Melton's claims of sexual harassment were true. Doc. 17, ¶¶50, 58.  Brooks

13

alleges that he doubted Melton's claims because she was angry at Simmons because of Burris' demotion and the discipline Melton received after calling Simmons a jackass. Doc. 17, ¶58. Finally, Brooks didn't believe Melton's claims of sexual harassment because he had been informed that Melton initiated discussions with other officers about sex and had made prior sexual advances to Simmons. Baxter told Brooks he had said too much about Melton. Doc. 17, ¶58.

Brooks further alleges that on March 27, 2018, 15 days after he filed a discriminatory retaliation claim, he was placed on unpaid leave and thereafter constructively discharged. Doc. 17, ¶¶68, 70, 72. Contrary to Defendants' statement that there is no explanation for how Title VII is impacted, Brooks has sufficiently pled a claim for retaliation.

5.    <u>Count V properly pleads a retaliation in violation of Title VII.</u>

Defendants argue Count V must be dismissed because Simmons' complaints internally and to state and federal authorities fail to establish an actionable claim for sexual harassment and thus did not engage in protected activity.

a.    <u>Simmons has sufficiently plead that he suffered harassment based on gender</u>

In support of Defendants' argument that Simmons' harassment was not due to gender, Defendants cite *Holman v. Indiana* wherein a husband and wife were subjected to requests for sexual acts by their supervisor and argue that conduct inflicted on both sexes or regardless of sex is outside the scope of Title VII. *Holman* has no application here because Simmons has not alleged that Burris inflicted sexually inappropriate conduct on both men and women. Further, as set forth

14

above, a plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017)

   b. <u>Defendants mischaracterize Count V in describing Burris' conduct as two benign statements about whether Simmons was having sex with his girlfriend and thus no reasonable person would believe Title VII had been violated.</u>

Simmons complained that during an official Pekin Police shift brief in December 2016, attended by seven police officers, Burris stated the following directly to him: Do you have a girlfriend?  Are you still dating Ina?  Did you f--k her? (This was stated several times).  You did, didn't you?  She has brain damage, she is a wild child and she likes them young.  In the past, she has f--ked (name omitted) and (name omitted). Doc. 17, ¶26.

Simmons first went to Sgt. Hutchinson about the problem. He then went to Deputy Chief Baxter and finally the City Manager. Doc. 17, ¶¶25, 27-28. After Simmons' complained to the City Manager, Burris had to forfeit 2 personal days. Doc. 17, ¶28. Burris continued to make offensive statements to Simmons. Burris' offensive statements only ended on April 6, 2017 when during another official Pekin Police Department shift brief, attended by approximately seven officers, Burris stated to Simmons:  Did you f - k the Iraqi chick?  Doc. 17, ¶31. Simmons reported Burris' conduct and as a result of Deputy Chief Kaminski's investigation, Burris received a suspension and was demoted. Doc. 17, ¶¶33, 36.

Simmons alleges that during a six-month period he was subjected to on going offensive comments by Burris. Doc. 17, ¶30.

Baxter and Deputy Chief Kaminski did not treat Burris' conduct as benign or Simmons' complaints as unreasonable. Baxter disciplined Burris first with the loss of two personal days and as a result of Kaminski's investigation, Burris was demoted and suspended.

In *Holland v. Jefferson National Life Insurance Company*, 883 F.2d 1307 (7th Cir. 1989, the plaintiff filed a claim of retaliation after she was terminated for complaining a supervisor had written "Big Boobs" under the description of physical requirements for a job position and another sexually offensive remark. The plaintiff asked her supervisor if the EEOC would think the writing was just a joke. *Holland* 882 F.2d at 1309. In addressing the issue of whether the plaintiff had a "reasonable belief" that she was challenging conduct in violation of Title VII, the court found that the plaintiff could reasonably have believed she was opposing unlawful sexual harassment. *Holland,* 883 F.2d at 1315. "[W]e do not believe that Mrs. Holland unreasonably believed the conduct…was in violation of the law." *Holland* 882 F.2d at 1315. The court held that given the plaintiff's reasonable belief she was opposing unlawful conduct by complaining about two incidents of harassment she had established a prima facia case of unlawful retaliation. *Holland* 882 F.2d at 1315. *Holland* establishes that offensive comments over a six-month period and Simmons' multiple complaints internally and to the EEOC show he had a reasonable belief that Burris had violated Title VII and has pleaded he engaged in protected activity and was subjected to an adverse employment action as a result.

6.   <u>Count VI properly pleads a violation of FLSA.</u>

Defendants misstate and mischaracterize the allegations of Count VI. Brooks has not alleged the City illegally "suspended him without pay." Doc. 18, ¶11. Brooks has alleged that on March 27, 2018 Brooks was placed on <u>unpaid leave</u> and remained so until his forced retirement on July 7, 2018. Doc. 17, ¶¶69, 71.

Defendants argue Pekin's Employee Manual contained a policy (Section 8.5) permitted Brooks' suspension without pay for those three months because the policy applied to all employees, including exempt employees.

Section 8.5 did not apply to Brooks for two reasons.

First, 65 ILCS 5/10-1-18(b) governs when and how the City could suspend Brooks, a civil servant. Pursuant to §5/10-1-18(b) of the Civil Service Act, the maximum period of time a police officer can be suspended is 35 days. (5 days maximum by the Chief and 30 days maximum by the Civil Service Commission).

In *People ex rel. Lasser v. Ramsey,* 23 Ill. App 2d 100, 103 (1st Dist. 1959) the Court held the Civil Service Act did not provide a department head authority to make repeated suspensions for the same offense so long as no one suspension exceeded 30 days because it would render the 30-day limitation meaningless. Similarly, Pekin cannot rely on a policy to impose a 3-month suspension in violation of the Illinois Civil Service Act. The Act, not Pekin's Employee Manual, solely controls the suspension and discharge of police officers.

Pekin's actions establish it did not believe the Employee Manual governed the proposed discipline of Brooks. Dossey filed a complaint with the Board of Fire

and Police Commissioners seeking an order terminating Brooks' employment. Doc. 17, ¶70. Dossey went to the Commission, not the City Manager, to discipline Brooks. See Doc. 18-2, Pg. 39.

Because 65 ILCS 5/10-1-18(b) governs the suspension of police officers and not the Employee Manual, Pekin has no written suspension policy applicable to all employees and thus could not place Brooks on unpaid leave pursuant to 29 C.F.R. §541.602(b)(5)

Second, in *Auer v. Robbins*, 519 U.S. 452, 461-462 (1997), the Court held that a disciplinary policy in which all employees are nominally covered is not enough to render an exempt employee's pay subject to disciplinary deductions when the manual containing the policy does not effectively communicate that pay deductions are an anticipated form of punishment for an exempt employee. *Auer*, 519 U.S. at 462. Section 1.2 of Pekin's Employee Manual, similarly, applies to "all employees of the City of Pekin." Doc. 18-2, ¶5. As in *Auer*, because Section 8.5 does not effectively communicate that the policy applies to exempt employees, Brooks pay was not subject to disciplinary deductions from March 27, 2018 through July 7, 2018.

7.    **Counts VII and VIII properly plead the necessary elements for claims of violations of the Age Discrimination in Employment Act (the "ADEA").**

Brooks and Simmons allege younger patrol officers, Lt. Burris and command officers were not disciplined and/or terminated when they engaged in the same or similar conduct Brooks and Simmons were charged with. Doc. 17, ¶87. Brooks and Simmons were over the age of 40 and two of the oldest polices officers. Doc. 17, ¶¶23-24. Defendants cite *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319 (7th Cir.

2002) in support of their argument that Brooks and Simmons "must show" they were treated less favorably and "must establish" who they were similarly situated with or their claims are not plausible. Defendants misunderstand what is required at the pleading stage. *Peele* was decided on summary judgment where the facts necessary to survive summary judgment are distinct from the facts needed at the pleading stage. *ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*, 282 F.Supp.3d 1043, 1053-1054 (N.D. Ill. 2017).

In *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed.Appx. 826, 828 (7th Cir. 2007), the plaintiff simply alleged she was 51 and the defendant fired her because of her age in 2013. The defendant argued the plaintiff needed to allege more details to make it plausible that age motivated the adverse action. *Clark*, 709 Fed.Appx. at 828. The argument was rejected. "[L]itigants are entitled to discovery before being put to their proof, [because] treating the allegations of the complaint as a statement of the party's proof leads to windy complaints and defeats the function of Rule 8." *Clark*, 709 Fed.Appx. at 828, quoting *Bennett v. Schmidt*, 153 F.3d 516, 519 (7th Cir. 1998). See also, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 994 (2002), ("An employment discrimination complaint need not contain specific facts establishing a prima facia case...the requirements for establishing a prima facia case do not apply at the pleading stage.")

8.   <u>**Counts IX and X properly plead the necessary elements for pendent claims of Intentional Interference.**</u>

Brooks and Simmons allege Melton made numerous knowingly false statements about Brooks and Simmons, some at the behest of Defendants Baxter and Dossey.

Brooks and Simmons made numerous allegations to support their claims against Melton. See Doc. 17, ¶¶ 38, 40, 41, 42, 43, 44, 46, 56, 57, 62, 68, 70 and 77.

The elements of intentional interference with employment relationship are: 1) reasonable expectation of continued employment; (2) knowledge of the business relationship by the interferer; (3) intentional interference; and (4) resultant damage. *Marczak v. Drexel Nat. Bank*, 186 Ill.App.3d 640, 645 (1st Dist. 1989). In order to find the interference was improper and a claim hence actionable, the plaintiff must show the defendant acted without justification or with malice. *Marczak*, 186 Ill.App.3d at 646.

Defendants first argue Melton's statements and conduct were not improper. Melton knowingly lied about Simmons making sexually offensive comments to her. Melton was upset that her friend Burris was disciplined. Melton knowingly lied that Brooks was retaliating against her and would do so in the future. Plaintiffs have sufficiently pleaded that Melton's actions were malicious and without justification. This is especially true when taking all reasonable inferences in Plaintiffs' favor, as is required on a Rule 12(b)(6) motion.

Defendants next argue the link between Melton's false statements and the Plaintiffs' adverse actions is tenuous. A reasonable inference is that Melton

repeated her false accusations in response to Brooks' complaint about her and that her false statements were part of the basis for Dossey's charge that Brooks had been untruthful in his complaint against Melton. There is no dispute Simmons was fired, in part, because of Melton's falsehoods. Melton's actions clearly formed a basis for the charges against both Brooks and Simmons resulting in their terminations.

Counts IX and X have plead sufficient facts to state a claim.

9. **Simmons properly pleads the existence of a §1983 action (Insurance) in Count XI.**

Simmons alleges that Pekin refuses to provide retiree insurance to Simmons as required by the Collective Bargaining Agreement (the "CBA") Doc. 17, ¶85. Ignoring the requirement that facts pleaded should be treated as true, the City argues that Simmons is not a retiree based on COBRA provisions of the City of Pekin Employee Handbook. Doc. 18-2, pg. 16.

Simmons alleges that he is presently receiving pension benefits in accordance with City's policies and the City's agreement with the union and that "any retiree" from the Police Department is eligible to remain on Pekin's insurance with the City paying a portion of the premiums. Doc. 17, ¶¶82, 83 and 84.  Indeed, Defendants' motion does not address how one not a retiree if he is receiving retirement benefits.

The City's reliance on *Board of Regents of State Colleges v. Roth*, 4018 U.S. 564 (1972) is misplaced.  Roth had no property interest in continued employment at the college because his contract was for one year.  He had no expectation of employment at the end of that contract.  Therefore, he had no claim to due process

when his contract was not renewed.  Simmons' rights under the CBA extend into the distant future.

Simmons alleges he has a property interest in City's payment of a portion of his insurance premiums and that the City deprived (and is depriving) him of that interest without notice or hearing. Doc. 17, ¶¶153, 154.

Simmons alleges the CBA explicitly grants the benefit to "any retiree," a class of which Simmons alleges he is a member.  The CBA overrides the Handbook, assuming a conflict exists between the two.  Actually, no such conflict exists.  Count XI is not based on the Handbook.  The Handbook does not apply.  The Handbook explicitly so states, "This Personnel Manual is not intended to replace or supersede a collective bargaining agreement that may cover many of the terms and conditions of employees covered by that agreement." Doc. 18-2, Pg. 4.  Whether Simmons is, or is not, a retiree under the CBA is a factual issue.  The premium sharing plan is in the union contract, and it has nothing to do with COBRA.  Simmons does not complain of a denial of COBRA benefits.  Simmons' complaint grows out of a contract City is bound by.

Under Illinois law the fact that an employee has been discharged "does not preclude a finding that she 'retired' from her employment and is entitled to all retirement benefits, including her sick-day bonus." *Dow v. Columbus-Cabrini Medical Center*, 274 Ill.App.3d 653, 659, 655 N.E.2d 1, 5, 211 Ill.Dec. 341, 345 (1st Dist. 1995). Simmons' retirement benefit of partial payment of health insurance premiums is analogous to a sick-day bonus. See also, *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1993

U.S.App. Lexis 32032 (7th Cir. 1993), reversed in part by *Ahng v. Allsteel, Inc.*, 96 F.3d 1033, 1996 U.S. App. Lexis 24970 (7th Cir. 1996) the Court applied the common parlance meaning to the term "retire."

Simmons' termination ended his employment but had no effect on his right to "retirement." Count XI properly states a due process claim.

10.   <u>Counts XII and XIII Properly State §1983 Claim.</u>

Brooks alleges he is a member of a protected class, participant in an investigation of Title XII violations and a complainant alleging discriminatory treatment by his superiors and employer. Doc. 17, ¶157. Simmons alleges he is a member of a protected class, namely a complainant alleging discriminatory treatment. To the extent that the heading on Count XII is labeled "sex discrimination" only, Paragraph 157 of the Complaint makes clear that Brooks has alleged (Count IV) discriminatory retaliation under Title VII. Doc. 17, ¶ 157.

a.   <u>Brooks allegations of discriminatory retaliation are extensively set forth in the Complaint</u>

Defendants ignore Brooks' retaliation allegations and devote the better part of their argument talking about gender.

Specifically, Brooks has alleged that on March 12, 2018, he filed a charge of discriminatory retaliation based upon his participation in the investigation of Melton's sexual harassment claims. Doc. 17, ¶68. Brooks opposed the request he discipline Simmons over Melton's first complaint. Brooks advised his superiors that he did not believe Melton's claims of sexual harassment were true. Doc. 17, ¶¶50, 58. Brooks alleges that he doubted Melton's claims because she was angry at

Simmons because of Burris' demotion and the discipline Melton received after calling Simmons a jackass. Doc. 17, ¶58. Finally, Brooks didn't believe Melton's claims of sexual harassment because he had been informed that Melton initiated discussions with other officers about sex and had made prior sexual advances to Simmons. Baxter told Brooks he had said too much about Melton. Doc. 17, ¶58.

Brooks further alleges that on March 27, 2018, 15 days after he filed a discriminatory retaliation claim, he was placed on unpaid leave and thereafter constructively discharged. Doc. 17, ¶69. Contrary to Defendants' statement that there is no explanation for how Title VII is impacted, Brooks sufficiently pled a claim for retaliation.

b. <u>Both Brooks and Simmons have alleged sufficient facts to plead a plausible cause of action under Title VII</u>

As set forth above, Defendants' arguments in Count XII and XIII ignore established law on pleading an employment discrimination case. Even after *Iqbal* and *Twombly*, "[t]he pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 Fed. Appx. 826, 828 (7th Cir. 2017) (citing cases establishing that the foregoing standard survived *Iqbal* and *Twombly*). Count XII and XIII satisfies this standard.

c. <u>Brooks § 1983 Claim is based upon Title VII.</u>

Brooks alleges retaliatory discrimination under Title VII. *Engquist v. Oregon Dept. of Agr.*, 553 U.S. 591 (2008) has no application to Brooks insofar as he is not alleging that he was fired for arbitrary vindictive or malicious reasons.

Plaintiffs may properly file a § 1983 claim even though the same facts establish a violation of Title VII. *Trigg v. Fort Wayne Community Schools,* 766 F 2d 299, 302, 1985. Defendants' request to dismiss Counts XII and XIII should be denied.

11. <u>**Counts XIV and XV properly plead a § 1983 claim based on conduct that violates the Age Discrimination and Employment Act (ADEA).**</u>

    a. <u>**Brooks and Simmons have plead multiple facts that younger similarly situated employees were treated differently**</u>

Brooks and Simmons allege "several officers employed by Pekin faced charges similar or worse than those leveled against Brooks and Simmons. Doc. 17, ¶ 87. Brooks and Simmons list 13 separate incidents where younger employees who engaged in misconduct, the same as or worse than alleged against Brooks and Simmons, were not disciplined in any way.

Brooks and Simmons can state a claim under § 1983 based upon violations of the ADEA. In *Levin v. Madigan,* 692 F 3d 607 (7th Circuit 2012), the Court held that "in light of our analysis of the ADEA and the relevant case law, and given these divergent rights and protections, we conclude that the ADEA is not the exclusive remedy for age discrimination and employment claims." *Levin,* 692 F.3d at 621-622.

As set forth above, Brooks and Simmons are not making a "class of one" claim, they are alleging violations of the ADEA and a claim under § 1983.

11. <u>**Brooks and Simmons properly allege breach of contract claim against Pekin in Counts XVI and XVII.**</u>

    a. <u>**Plaintiffs have more than adequately given Defendants notice of the nature of his claim.**</u>

Again, as has been the case throughout Defendants' motion, the Court has been asked to dismiss Count XVI and XVII because Plaintiffs have not pled or produced evidence of each and every element of a *prima facie* case that the City breached its contract as contained in Employee Handbook (not paying toward Simmons' health insurance premiums and Brooks' accrued sick time). Simmons and Brooks allege that at all relevant times Pekin maintained an Employee Handbooks and was signatory to a contract containing a clear promise regarding insurance and sick leave benefits for <u>retired</u> employees. The handbook had been disseminated to Simmons and Brooks. Doc. 17, ¶82. Simmons has also alleged that he is receiving retirement benefits and that any retiree is eligible to remain on Pekin's insurance with Pekin paying a portion of the premiums and Pekin refused to provide retiree insurance to Simmons as required by the CBA. Doc. 17, ¶83-85.

 b. <u>Simmons' termination does not negate his status as a retiree.</u>

As set forth in the response to Count XI, as a matter of law, Simmons is a "retiree."

 c. <u>Defendants mischaracterize Brooks' claim for accrued sick time.</u>

Brooks simply asks the Court order Defendants to pay his accrued sick time pursuant to the contract, which would necessarily result in the funds being used for payment of insurance premiums.

WHEREFORE, Plaintiffs, John Brooks and Gregory Simmons, request that this honorable Court deny Defendants' Motion to Dismiss, and for such other and further relief this Court deems just.

JOHN BROOKS AND GREGORY SIMMONS,
Plaintiffs,


/s/    Julie L. Galassi
One of their attorneys


JULIE L. GALASSI, ESQ., BAR NO. 6198035
DUSTIN R. JENSEN, ESQ., BAR NO. 6306248
ATTORNEY FOR PLAINTIFFS
HASSELBERG, ROCK, BELL & KUPPLER, LLP
Suite 200 Associated Bank Building
4600 N. Brandywine Drive
Peoria, IL 61614-5591
Telephone: (309) 688-9400
Facsimile: (309) 688-9430
E-mail: jgalassi@hrbklaw.com
         djensen@hrbklaw.com

JAMES L. HAFELE, ESQ.
ATTORNEY FOR PLAINTIFFS,
KAVANAGH, SCULLY, SUDOW,
WHITE & FREDERICK, P.C.
301 S.W. Adams, Suite 700
Peoria, IL 61602
Telephone:   (309) 676-1381
Facsimile:   (309) 676-0324
Email: jameshafele@kjsswf.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Philip M. O'Donnell
Christopher H. Sokn
Kingery Durree Wakeman & O'Donnell
416 Main Street, Suite 1600
Peoria Illinois 61602
<u>pmodonnell@kdwolaw.com</u>
<u>chsokn@kdwolaw.com</u>

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

None.

JOHN BROOKS AND GREGORY SIMMONS,
Plaintiffs,


/s/    *Julie L. Galassi*
JULIE L. GALASSI, Esq., Bar No. 6198035
Dustin R. Jensen, Esq., Bar No. 6306248
Attorney for Plaintiffs
HASSELBERG, ROCK, BELL & KUPPLER, LLP
Suite 200 Associated Bank Building
4600 N. Brandywine Drive
Peoria, IL 61614-5591
Telephone: (309) 688-9400
Facsimile: (309) 688-9430
E-mail: jgalassi@hrbklaw.com
            djensen@hrbklaw.com