# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

JOHN BROOKS & GREGORY
SIMMONS,

    Plaintiffs,

          v.

CITY OF PEKIN, JOHN DOSSEY,
DONALD BAXTER, SARAH NEWCOMB,
& JENNIFER MELTON,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  1:18-cv-01334

## <u>ORDER & OPINION</u>

Before the Court is the Defendants' Motion to Dismiss for Failure to State a Claim. (D. 18).[1] The motion has been fully briefed and is ready for disposition. For the reasons stated herein, Defendants' Motion to Dismiss (D. 18) is GRANTED IN PART and DENIED IN PART.

### BACKGROUND[2]

Plaintiffs Gregory Simmons and John Brooks were both employees of Defendant City of Pekin's police department; Plaintiff Brooks was hired on May 26, 1995, and Plaintiff Simmons on October 9, 1995 (D. 17 at 2). In 2016, Plaintiff Simmons reported his shift commander, Lieutenant Gregory Burris, for making sexually offensive statements to him during an official department shift brief. *Id.* at

---

[1] Citations to the Docket in this case are abbreviated as "D.__."
[2] The Court takes as true all of Plaintiffs' well-pleaded factual assertions for the purpose of resolving this Motion to Dismiss.

3. Those statements were restated several times, and included "Are you still dating [name omitted]? Did you f—k her?" *Id*. An investigation confirmed Burris engaged in the complained-of conduct; on May 1, 2017, Burris was disciplined, demoted to the rank of a patrol officer, and suspended without pay for twenty-one days. *Id*. at 4.

Plaintiff Brooks, based on his seniority, was promoted to the first shift Lieutenant position previously occupied by Burris. *Id*. at 5. Soon after, Defendant Jennifer Melton, a patrol officer, requested to transfer to third shift; she did not like Plaintiff Brooks because he had previously disciplined her for dereliction of duty and therefore she did not wish to work under him. *Id*.

On May 5, 2017, Defendant Melton referred to Plaintiff Simmons as a "jackass" during an official department shift brief and received counseling as a result on May 22, 2017. Immediately after, on May 25, 2017, Defendant Melton complained Plaintiff Simmons had made inappropriate comments about her breasts. *Id*. at 6. Plaintiff Simmons denied making the alleged comments, and another officer who was present corroborated his denial. Defendant Melton admitted she made the complaint because she was disciplined for calling Plaintiff Simmons a jackass. She also admitted to another officer she was not offended by fellow male officers' comments and actually initiated sex-related conversations with them. Additionally, on one previous occasion she tried to grope Plaintiff Simmons, but he refused her advance. *Id*.

Plaintiff Brooks was ordered to investigate Defendant Melton's complaint about Plaintiff Simmons' alleged comments. On May 26, 2017, Plaintiff Brooks informed Defendant John Dossey and Defendant Donald Baxter, the Chief and

Deputy Chief of the police department, that he felt it was inappropriate to discipline Plaintiff Simmons in light of his corroborated denial of Defendant Melton's allegations. Plaintiff Brooks was instructed to take no further action because Defendant Melton's complaint was "not a big deal." *Id.* at 7. However, Defendants Baxter and/or Dossey immediately told Defendant Melton to resubmit her complaint, and she did so on May 27, 2017. On June 6, 2017, Defendant Dossey placed Plaintiff Simmons on administrative leave with pay and initiated a formal investigation into Defendant Melton's allegations ("the Melton investigation"). *Id.*

*Subsequent Facts Relating to Plaintiff Brooks*

On June 7, 2017, Plaintiff Brooks was interrogated, in connection with the Melton investigation, about Defendant Melton's complaint and his investigation into it. (D. 17 at 7). During the interrogation, Plaintiff Brooks stated that he believed Defendant Melton's allegations were not true and were made because her friend Burris was demoted and because she was disciplined for calling Plaintiff Simmons a jackass. Plaintiff Brooks also stated Defendant Melton regularly initiated conversations with coworkers about sex and had made sexual advances toward Plaintiff Simmons in the past. *Id.* at 8.

On June 8, 2017, Plaintiff Brooks was informed he might be temporarily transferred to second shift because Defendant Melton was concerned Plaintiff Brooks would retaliate against her. On June 9, 2017, Plaintiff Brooks was told his transfer might be permanent even though his superiors were aware he could not work second shift because of his severe sleep apnea condition. *Id.* On June 16, 2017, Plaintiff Brooks was told the transfer was permanent, so he filed an accommodation request

under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12111 *et seq.*, requesting to stay on first shift. His request was denied, and he learned he was transferred because of his statements during the Melton investigation. *Id*.

In June 2017, Plaintiff Brooks filed a complaint with the Human Resources Department for retaliation and harassment and/or misconduct against Defendants Dossey, Baxter, and Melton, but the complaint was summarily dismissed. Plaintiff Brooks filed a second complaint one month later. It was also summarily dismissed, and Plaintiff Brooks was called a liar. *Id*. at 9.

In October 2017, Plaintiff Brooks filed a charge of discrimination based on Defendant Pekin's refusal to accommodate his disability. On November 13, 2017, Plaintiff Brooks informed Defendant Pekin he disputed Pekin's dismissing his claims without discussing them with him. The same morning, he was placed on paid administrative leave. On March 12, 2018, Plaintiff Brooks filed a charge alleging discriminatory retaliation based on his participation in the Melton investigation. Thereafter, on March 27, 2018, he was placed on unpaid administrative leave. *Id*.

Two days later, Defendant Dossey filed a complaint with the Board of Fire and Police Commissioners (Board) to terminate Plaintiff Brooks' employment. The reasons for termination stated therein were (1) being untruthful during the investigation of Defendant Melton's claims, (2) calling Dossey a liar, and (3) violating the Personnel Records Review Act. On July 7, 2018, Plaintiff Brooks submitted his retirement benefit application, a move he felt forced to take because he could not risk the loss of insurance and other retirement benefits. *Id*. at 10.

*Subsequent Facts Relating to Plaintiff Simmons*

Although having been ordered to refrain from discussing the investigation with other officers while on paid administrative leave during the Melton investigation, Plaintiff Simmons consulted his immediate supervisor, Plaintiff Brooks, shortly after being placed on leave because he was confused about conflicting instructions given by Defendant Baxter regarding the investigation and his administrative leave. (D. 17 at 7). On June 19, 2017, Plaintiff Simmons was formally interrogated by Defendant Baxter, during which time he initially and accidentally denied speaking to Plaintiff Brooks about the investigation. He later corrected his statement to admit that he had spoken to Plaintiff Brooks. *Id*. at 10. On July 21, 2017, Plaintiff Simmons was placed on unpaid administrative leave. *Id*. at 7.

On August 23, 2017, Defendant Dossey filed a complaint with the Board requesting Plaintiff Simmons' termination based on Defendant Melton's allegations and his false statement that he had not spoken with Plaintiff Brooks during his leave. *Id*. at 10. Plaintiff Simmons challenged the request for his termination based on his collective bargaining agreement (CBA); specifically, he alleged Defendant Dossey's proffered reasons for termination did not meet the "just cause" standard contained therein. Plaintiff Simmons also demanded arbitration per Illinois Law. *Id*. at 11. On or about January 22, 2018, Plaintiff Simmons filed a sex and age discrimination charge with state and federal authorities. Notwithstanding the unresolved dispute over "just cause" and Plaintiff Simmons' demand for arbitration, Defendant Dossey proceeded with a hearing before the Board in Plaintiff Simmons' absence. *Id*.

The Board terminated Plaintiff Simmons' employment on March 13, 2018. Plaintiff Simmons submitted his retirement benefit application thereafter and is presently receiving pension benefits, but Defendant Pekin refuses to contribute to his insurance premiums. *Id.*

## LEGAL STANDARD

The Defendants have moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing the Plaintiffs' Amended Complaint (D. 17) is devoid of any valid claim. (Doc. 18). To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Many of the Plaintiffs' claims allege employment discrimination. The standards for dismissal in employment discrimination cases pose "some unresolved tension" between the *Twombly* and *Iqbal* decisions and the *Swierkiewicz* decision, in which the Supreme Court rejected a heightened pleading requirement for complaints of employment discrimination in light of notice pleading standards. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013); *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 510–14 (2002). Although *Twombly* replaced the notice pleading standard with a requirement that complaints contain enough facts, taken as true, to suggest plausible entitlement to relief, it explicitly upheld *Swierkiewicz*. To reconcile these two standards, the Seventh Circuit has applied a rule that "in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008); *Tate v. SCR Medical Transp.*, 809 F.3d 343, 346 (7th Cir. 2015); *Luevano*, 722 F.3d at 1028; *see also Freeman v. Metro. Water Reclamation Dist. of Greater Chi.*, 927 F.3d 961, 965 (7th Cir. 2019) ("A plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory to survive a motion to dismiss. Rather, to proceed against the District under § 1983 or Title VII, Freeman needed only allege— as he did here—that the District fired him because of his race.").

## DISCUSSION

In their Amended Complaint, the Plaintiffs allege seventeen separate claims (D. 17), each of which the Defendants challenge in the instant Motion. (D. 18). The Court will address each claim in turn.

## I. Counts I and II – Plaintiff Brooks' ADA Claims for Failure to Accommodate and Disparate Treatment

Plaintiff Brooks first alleges claims for failure to accommodate his disability (Count I) and disparate treatment (Count II) in violation of the ADA, 42 U.S.C. § 12112. (D. 17 at 14, 15). The Defendants argue Plaintiff Brooks has failed to allege

he suffers a disability as defined by the ADA, thus precluding either claim. (D. 18 at 4–7).

The ADA prohibits discrimination against qualified individuals "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." § 12112(a). "The ADA then defines 'discriminate against a qualified individual on the basis of disability' to include disparate treatment *and* failure to accommodate: 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . . .'" *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019), *reh'g and suggestion for reh'g en banc denied* (Mar. 1, 2019) (quoting § 12112(b)(5)(A)) (emphasis in original). "A claim for disparate treatment based on disability under the ADA . . . requires proof (1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the "but for" cause of adverse employment action." *Id.* (emphasis omitted). "A claim for failure to accommodate under the ADA . . . requires proof (1) plaintiff was a qualified individual with a disability; (2) defendant was aware of his disability; and (3) defendant failed to accommodate his disability reasonably." *Id.* (emphasis omitted).

To survive a Rule 12(b)(6) motion, a plaintiff alleging either form of ADA discrimination must, at the very least, adequately plead she is a qualified individual with a disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011) ("If

[the plaintiff] cannot establish that she is a qualified individual with a disability, then her claim automatically fails, as she bears the burden of showing that she falls within the scope of the ADA's anti-discrimination provisions."). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An individual is disabled within the meaning of the ADA if (A) he or she suffers from "a physical or mental impairment that substantially limits one or more major life activities," (B) there exists "a record of such an impairment," or (C) he or she is regarded "as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C). "Major life activities" include, *inter alia*, working, sleeping, and breathing. § 12102(2)(A).

Whether a plaintiff has adequately pleaded he is a qualified individual with a disability thus depends on four operative questions: (1) whether he is a qualified individual, (2) whether he suffers from a physical or mental impairment, (3) whether such an impairment affects a major life activity, and (4) whether such an effect amounts to a substantial limitation. *See Kotwica*, 637 F.3d at 748; 42 U.S.C. § 12111(8), 12102(1)(A).

The Amended Complaint allows the reasonable inference Plaintiff Brooks is a qualified individual. There is no indication he was unable to perform the essential functions of his job, at least while working first shift. Indeed, Plaintiff Brooks had been employed by Defendant Pekin's police department for over twenty years and nothing in the Amended Complaint suggests any of Plaintiff Brooks' alleged adverse

employment actions were the result of his being unable to perform his official duties. (*see* D. 17 at 2, 7–8). Still, Plaintiff Brooks also alleges he has been diagnosed with sleep apnea. *Id*. at 8. By definition, sleep apnea affects both breathing and sleep, and Plaintiff Brooks has also alleged his sleep apnea affects his ability to work (*see* D. 17 at 8; D. 20 at 10). Although Plaintiff Brooks does not explicitly state in the Amended Complaint that his sleep apnea has a "substantial impact" on his major life activities, his allegation that he could not physically work second shift, together with his allegations about its effects on his breathing and ability to work, suffice at this stage to plausibly allege Brooks' entitlement to relief. *See Freeman*, 927 F.3d at 965 (no requirement to allege each evidentiary element of a legal theory).

Thus, the Court turns to Defendants' argument that Plaintiff Brooks failed to allege what a reasonable accommodation for his sleep apnea should have been, what he requested from the City, or what they offered in response. In the Amended Complaint, Brooks alleged that Pekin had "long-term knowledge that Brooks could not physically work second shift due to his severe sleep apnea condition," and that his request for an ADA accommodation was denied notwithstanding his physician reports because Pekin and its agents "were motivated by animus toward Brooks' disability and with the intent to cause an adverse action." (D. 17 at 8–9, 14). Given the standard that complaints of employment discrimination need only aver that the employer instituted an adverse action against the Plaintiff based on his protected characteristic (in this case, disability), Counts I and II of the Amended Complaint are

sufficient to withstand Defendants' Motion to Dismiss at this time. *See Tamayo*, 526 F.3d at 1084.

## II.  Count III – Plaintiff Brooks' ADA Claim of Retaliation

Defendants again argue Plaintiff Brooks failed to allege he is disabled as defined by the ADA, thus precluding his claim of retaliation based on his ADA-protected activities. (D. 18 at 7). "Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." *Koty v. DuPage Cty., Ill.*, 900 F.3d 515, 519 (7th Cir. 2018). Even if Plaintiff Brooks were not disabled, he could still validly state a claim for ADA retaliation. Because the basis for Defendants' request to dismiss Count III is clearly foreclosed by Seventh Circuit precedent, and because Plaintiff Brooks has sufficiently pleaded that he was disabled, Count III may proceed. Still, as the Plaintiffs concede, Count III will proceed absent the demands for a jury trial and compensatory damages. (*See* D. 20 at 13).

## III.  Count IV – Plaintiff Brooks' Title VII Claim of Retaliation

Plaintiff Brooks next alleges Defendant Pekin retaliated against him in violation of 42 U.S.C. § 2000e-3(a) for his participation in the Melton investigation and his subsequent report of retaliation based on that participation. (D. 17 at 17). Defendants argue participation in an internal investigation of sexual harassment is not Title VII-protected activity. (D. 18 at 8).

"To plead a Title VII retaliation claim, a plaintiff must (though she need not use the specific terms) allege that she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri v. Office*

*of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015); *see also Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 933 (7th Cir. 2017). Title VII provides, in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has . . . participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a). "The participation clause prohibits retaliation against an employee who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under' Title VII." *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 747 (7th Cir. 2010) (quoting § 2000e-3(a)). However, "[t]he 'investigation' to which section 2000e-3 refers does not include an investigation by the employer, as distinct from one by an official body authorized to enforce Title VII." *Id.* at 746–47.

The Amended Complaint contains no facts suggesting the Melton investigation was one conducted "by an official body authorized to enforce Title VII." *See id.* Rather, the amended complaint suggests the investigation was entirely internal. (*See* D. 17 at 6–8). Thus, Plaintiff Brooks' participation in that investigation was not activity that can sustain a claim of discrimination—or retaliation—under Title VII.

This leaves Plaintiff Brooks' formal charge of retaliation, which claims retaliation for formally making a charge of retaliation with the EEOC based on his participation in the internal investigation. Where the alleged protected activity is a charge of discrimination or retaliation, the underlying charge need not be meritorious to prevail on a claim for retaliation, so long as the underlying charge is not "utterly

baseless" or made in bad faith. *Mattson v. Caterpillar, Inc.*, 359 F.3d 885, 890 (7th Cir. 2004). As stated above, the facts before the Court indicate the underlying conduct—participation in the internal Melton investigation—was not Title VII-protected activity, per established Seventh Circuit precedent. However, retaliation arising from Plaintiff Brooks' EEOC charge could be the basis of a valid claim, provided that the underlying charge was not utterly baseless or made in bad faith. Construing the Amended Complaint in the light most favorable to the Plaintiff, the Court cannot definitively determine that the underlying complaint was made without a reasonable good-faith belief that the practice he opposed violated Title VII. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 752 (7th Cir. 2002). As such, the Motion to Dismiss Count IV is granted as to Plaintiff's allegations regarding his participation in an internal investigation, and denied as to Plaintiff's allegation regarding his alleged filing of a retaliation charge on March 12, 2018.

## IV. Count V – Plaintiff Simmons' Title VII Claim of Retaliation

In Count V, Plaintiff Simmons alleges retaliation based on his charges of sexual harassment, which were reported internally, to state officials, and to the EEOC. (D. 17 at 18–19). Defendants respond by attacking the validity of Plaintiff Simmons' charge of sexual harassment. (D. 18 at 9–11).

As stated above, to adequately plead a retaliation claim, the plaintiff must allege "she engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity." *Huri*, 804 F.3d at 833. Again, where the protected activity is a charge of discrimination, this standard does not require the underlying charge be meritorious, so long as the employee reasonably believed in good

faith that they suffered discrimination. *Mattson*, 359 F.3d at 890. The question before the Court is thus whether Plaintiff Simmons' charges of sexual harassment—his internal reports of Burris' comments—were frivolous claims of discrimination proscribed by Title VII, such that his retaliation claim would fail, or based on a good-faith belief that he was the subject of discrimination, such that his retaliation claim could stand.

Here, Plaintiff Simmons claims that Burris crudely asked him whether he had been intimate with a certain woman and made disparaging comments about her. Offensive, sexual comments may or may not rise to the level of sexual harassment in violation of Title VII, but the Court finds that, construing the record in favor of Plaintiff Simmons, he could have reasonably believed that his internal complaints and complaints to the EEOC were justified by discriminatory harassment. Therefore, his claim for retaliation should not be dismissed at this early stage of litigation.

## V.    Count VI – Plaintiff Brooks' FLSA Claim

In Count VI, Plaintiff Brooks alleges Pekin violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, by placing him on unpaid leave from March 17, 2018, to July 7, 2018. (D. 17 at 20). Plaintiff Brooks seeks payment of the salary he would have received had he not been placed on unpaid leave.

The FLSA sets minimum wage requirements and entitles employees "to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213); *see also* 29 U.S.C. § 206. One category of exempt

employees is "those employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Pursuant to the authority delegated by Congress, *id.*, the Secretary of Labor enacted regulations defining this category. "An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a).[3] Where an employer impermissibly decreases a salaried employee's pay, the FLSA consequence is loss of the exempt status, unless the employer can avail itself of the safe harbor. 29 C.F.R. § 541.603.

In Count VI, Plaintiff Brooks does not set forth a legally cognizable theory. Indeed, Plaintiff Brooks' claim is nearly identical to that rejected in *Ridings v. Riverside Med. Ctr.*, No. 05-2134, 2006 WL 3478091, at *7 (C.D. Ill. Nov. 30, 2006), *aff'd*, 537 F.3d 755 (7th Cir. 2008). There, the Court reasoned:

> Ridings makes no argument that as a result of her three day suspension she should be considered an hourly employee and receive lost overtime compensation. Rather, Ridings seeks merely to recover the pay from the three days she was suspended. Ridings has cited no decision which allows an employee to recover for one instance of being placed on suspension for the lost days worked, nor has Ridings indicated any statutory basis for such a recovery.

---

[3] The Court notes that there are exceptions to this rule, including pay deductions in the form of unpaid disciplinary suspension "imposed pursuant to a written policy applicable to all employees[.]" 29 C.F.R. § 541.602(b)(5). However, such exceptions are not relevant here because, as will be discussed, Plaintiff Brooks has failed to advance a legally cognizable theory.

*Id.* (internal citations omitted). Because the plaintiff in *Ridings* did not argue "she should be compensated for lost overtime wages," the Court determined her claim was not legally cognizable under the FLSA. *Id.*

The Court finds no reason to depart from this interpretation or holding, though the Defendants fail to advance this theory in the instant Motion. The "salary basis test" set forth in 29 C.F.R. § 541.602 does not create a cause of action available to a salaried employee who experiences an impermissible deduction in pay. Rather, it determines whether an employee is exempt from the FLSA and therefore whether his or her employer must pay the minimum wage and/or overtime pay; it provides, *inter alia*, a mechanism for employees who are impermissibly treated as exempt to recoup lost overtime wages. For these reasons, Count VI is dismissed with prejudice.

## VI.    Counts VII and VIII – The Plaintiffs' Age Discrimination Claims

In Counts VII and VIII the Plaintiffs allege age discrimination in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* (D. 17 at 21–23). The ADEA prohibits workplace discrimination on the basis of age. ADEA, 29 U.S.C. § 623(a). A claimant alleging age discrimination must be at least 40 years of age. ADEA, 29 U.S.C. § 631(a). And "[t]o succeed on a discrimination claim under the ADEA, a plaintiff must show that her termination or other adverse employment action would not have occurred 'but for' her employer's motive to discriminate on the basis of her age." *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001) (internal quotation marks omitted). An ADEA claim may be ultimately proven "if the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor

caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Here, the Plaintiffs, both of whom were over the age of 40 at all relevant times, allege they suffered adverse employment actions because of discriminatory animus toward their ages; Plaintiff Brooks alleges he was forced into retirement, and thus constructively discharged, because of his age, while Plaintiff Simmons alleges he was terminated because of his age and the investigation preceding his termination was both a sham and a pretext. (D. 17 at 21–23). Additionally, the Plaintiffs allege similarly situated[4] younger employees were not terminated for acts of misconduct similar to the acts that Defendants allege caused Plaintiffs' terminations (i.e., Plaintiff Brooks' alleged untruthfulness and violation of the Personnel Records Review Act and Plaintiff Simmons' recordings and alleged inappropriate comments about Defendant Melton). *Id.* at 12–14.

Taking the facts alleged in the complaint as true, the Court finds the Plaintiffs have stated plausible ADEA claims. *See, e.g.*, *King v. Elementary Sch. Dist. #159*, No. 17-CV-4637, 2018 WL 1734645, at *5 (N.D. Ill. Apr. 10, 2018); *Heinze v. S. Ill. Healthcare*, No. 08-CV-0672, 2010 WL 276722, at *3 (S.D. Ill. Jan. 19, 2010). Counts VII and VIII shall therefore proceed.

---

[4] Though the Defendants correctly point out the Plaintiffs' factual allegations fail to allege the other employees were similarly situated, the heading under which these allegations appear state the employees are similarly situated. (D. 17 at 12). The Court will thus infer that factual allegation here, which is appropriate at this stage of the proceedings.

## VII. Count IX and X – The Plaintiffs' Intentional Interference with Employment Claims

In Counts IX and X, the Plaintiffs claim Defendant Melton intentionally interfered with their employment relationships with Defendant Pekin by making false claims about them—Plaintiff Brooks claims Defendant Melton falsely claimed he retaliated against her, and Plaintiff Simmons claims her allegations against him were false. (D. 17 at 23–24). Defendant Melton argues the connection between her conduct and Plaintiff Brooks' retirement and Plaintiff Simmons' termination is too attenuated to state a plausible claim of intentional interference. (D. 18 at 14–15).

"To establish the tort of intentional interference with a business relationship under Illinois law, a plaintiff must show (1) a reasonable expectation of continued employment; (2) knowledge of the business relationship by the defendant; (3) intentional interference; and (4) [resultant] damages." *Redd v. Nolan*, 663 F.3d 287, 291 (7th Cir. 2011) (citing *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk and Western Ry. Co.*, 748 N.E.2d 153, 161 (Ill. App. 2001); *Labate v. Data Forms, Inc.*, 682 N.E.2d 91, 94 (Ill. App. 1997)). The Plaintiffs' Amended Complaint easily establishes the first and second elements at this stage of the proceedings. Illinois courts have "long recognized a legitimate expectancy in an employment relationship." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. App. 1991) (citing *London Guarantee & Accident Co. v. Horn*, 69 N.E. 526, 531 (Ill. App. 1903)). And it is obvious that Defendant Melton was aware of Plaintiffs Brooks and Simmons' employment, given that they all worked together.

To satisfy the third element, Illinois courts require a plaintiff to show the "defendant acted either without justification or with malice," *Marczak v. Drexel Nat'l Bank*, 542 N.E.2d 787, 790 (Ill. App. 1989), which typically requires an element of falsity. *See, e.g.*, *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 301 (Ill. 2001) (holding the transmission of "accurate and proper" reports did not amount to intentional interference); *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 172 (7th Cir. 1993) ("permitting recovery for tortious interference based on truthful statements would seem to raise significant First Amendment problems"); Restatement (2d) of Torts § 772 (1979).[5]

Plaintiff Brooks claims Defendant Melton intentionally interfered with his employment by falsely accusing him of retaliating against her. Specifically, the Amended Complaint alleges that Defendant Melton falsely told Defendant Baxter that Plaintiff Brooks "had been nitpicking and treating her differently" since she accused Plaintiff Simmons of making inappropriate comments. (D. 17 at 8). These allegations sufficiently allege intentional interference.

However, the Court cannot reasonably infer a connection between Defendant Melton's statements and Plaintiff Brooks' alleged constructive discharge. Defendant Melton made the relevant statement on June 8, 2017, but Plaintiff Brooks did not submit his retirement benefits application until July 7, 2018, over a year later. (D. 17 at 8, 10). During that time, Plaintiff Brooks was under investigation not for his

---

[5] "While [the Illinois] supreme court has not explicitly adopted section 772 of the Restatement, it continues to look to the Restatement for guidance in outlining the contours of tortious interference actions." *Atanus v. Am. Airlines, Inc.*, 932 N.E.2d 1044, 1049 (2010).

treatment of Defendant Melton but instead for his alleged untruthful complaints to Human Resources, for allegedly calling Defendant Dossey a liar, and for allegedly violating the Personnel Records Review Act. *Id.* at 9. Additionally, Plaintiff Brooks' complaint suggests he believes his transfer to second shift and ultimate constructive discharge were the result of his participation in the Melton investigation (and his sleep apnea)—not her claims of retaliation. Even if the proffered reasons for Plaintiff Brooks' termination were, in fact, pretextual, Plaintiff Brooks has not alleged facts that would allow a juror to plausibly infer that Defendant Melton's claim of retaliation caused his termination. Absent a causal connection between those statements and the alleged damages, there can be no valid claim for intentional interference. *See Voyles*, 751 N.E.2d at 1133 (noting the alleged damages must result from the interference). Count IX thus fails to state a claim. Because the deficiency could be factual as opposed to legal, Plaintiff Brooks may replead Count IX.

Plaintiff Simmons alleges Defendant Melton intentionally interfered with his employment because her allegations of sexual harassment (the alleged comments about her breasts) were false and those false statements directly caused his termination. (D. 17 at 24). The Complaint indeed alleges facts indicating Defendant Melton's false allegations caused an investigation, which resulted in Plaintiff Simmons' termination based, in part, on those allegations. *Id.* at 6–7, 10–11. The Court is not persuaded by the Defendants' concern that allowing this claim to proceed past the dismissal stage will chill truthful allegations of "lewd and inappropriate conduct." (D. 18 at 15). Plaintiff Simmons claims the allegations were false and the

investigation into the allegations was a sham to create a pretextual reason for his termination. If the allegations were indeed false, as the Court must presume at this stage of the proceedings, then Plaintiff Simmons has sufficiently pleaded his claim. In sum, the factual allegations contained in the Complaint, taken as true, support his claim of intentional interference and state a plausible claim for relief. Count X may proceed.

## VIII. Count XI – Plaintiff Simmons' Due Process (Retiree Insurance) Claim

In Count XI, Plaintiff Simmons alleges, through 42 U.S.C. § 1983, Defendant Pekin has deprived him of retiree insurance benefits without due process of law. (D. 17 at 24–25).

To adequately state a due process claim in this context, Plaintiff Simmons must first "allege sufficient facts showing that he had a legitimate claim of entitlement to . . . benefits under the collective bargaining agreement." *Cushing v. City of Chi.*, 3 F.3d 1156, 1159 (7th Cir. 1993). "Property interests under the Fourteenth Amendment 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' " *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564 (1972)). A collective bargaining agreement can give rise to a property interest. *Id.*

Plaintiff Simmons alleges the collective bargaining agreement states "[a]ny retiree after May 1, 2010 shall be able to continue insurance in the applicable category (employee, family, etc.), and will share equally the applicable monthly rate

with the City (the employee pays 50% and the City 50%) until the employee reaches the earlier of age 65 or eligibility for Medicare or the parties agree to change this provision." (D. 17 at 25). This is sufficient at the dismissal stage to allege a property interest for retirees. However, Plaintiff Simmons' status as a retiree is less certain.

Plaintiff Simmons was terminated. (D. 17 at 11) ("The Board of Fire and Police Commissioners terminated Simmons' employment on March 13, 2018."). He did not retire in the usual sense of the word, which connotes a voluntary cessation of work at the end of a career. Plaintiff Simmons nevertheless argues he is a retiree within the meaning of the CBA, though he does not attach a copy of the CBA nor cite any provision therein defining the term. He instead points to the fact that he is receiving payment of Illinois pension benefits, and he cites an Illinois Appellate Court case for the proposition that an employee who is terminated for cause may nevertheless be considered a retiree. (D. 20 at 22–23).

Defendants argue that Pekin's handbook (which Plaintiffs rely on repeatedly in their Amended Complaint in Counts XVI and XVII) explicitly states that employees who resign or are terminated prior to retirement are entitled only to those rights provided by federal and state law, and nothing more in terms of post-employment insurance benefits. (D. 18 at 16; D. 18, Exh. 2 at 16).

In *Dow v. Columbus-Cabrini Med. Ctr.*, 274 Ill. App. 3d (1st Dist. 1995), the case cited by Plaintiff, the Illinois Appellate Court concluded an employee who was terminated for cause, but who had also met the requirements to attain retirement status per the applicable employment contract, was entitled to a sick-day payout

available to those who retired as well as those who were terminated due to economic issues or downsizing. However, unlike the pension in *Dow*, Plaintiff Simmons' pension is a public pension regulated by Illinois state law, not the city of Pekin or the CBA. *See* 40 ILCS 5/3–101. Plaintiff Simmons' sole factual allegation offered to demonstrate that he is entitled to insurance benefits from Pekin under the CBA is that he is collecting Illinois pension payments. This is insufficient to plausibly demonstrate he is a retiree as defined by the CBA. Plaintiff Simmons therefore has not adequately pleaded "a legitimate claim of entitlement to . . . benefits under the collective bargaining agreement." *Cushing*, 3 F.3d at 1159. Although this issue may resurface if Plaintiff Simmons is successful in his other claims, Count XI is dismissed. Plaintiff Simmons may replead Count XI if he is able to cure the factual deficiencies.

## IX. Counts XII and XIII – The Plaintiffs' "Equal Protection/Sex Discrimination" Claims

Counts XII and XIII are perplexing. Though labeled "Equal Protection Claim/Sex Discrimination Claim[s]," the allegations therein implicate neither the Equal Protection clause nor Title VII's prohibition of discrimination on the basis of sex. (D. 17 at 26–32). The Plaintiffs attempt to clarify in their response to the motion to dismiss; there, they allege Counts XII and XIII are § 1983 claims based on "discriminatory retaliation under Title VII." (D. 20 at 23). Title VII creates statutory rights, not constitutional ones, and § 1983 provides no remedy for violations of Title VII. *See Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989). Presumably, Plaintiffs mean that their constitutional rights to equal protection were violated by the same behavior giving rise to their Title VII claims. However, they claim that their equal protection

claims stem from their membership in two protected classes: "participant in an investigation of Title VII violations" and "complainant alleging discriminatory treatment by his superiors and employer." (D. 20 at 23). Neither the Amended Complaint nor the Response to the Motion to Dismiss allege a basis for the underlying discrimination, other than the title heading.

Neither "participant in an investigation of Title VII violations" nor "complainant alleging discriminatory treatment" is inherently a suspect class. *See, e.g., Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010) ("The Equal Protection Clause of the Fourteenth Amendment most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a 'fundamental right,' or because the person is a member of a group that is the target of irrational government discrimination."). Although Plaintiffs title Counts XII and XIII "Equal Protection/Sex Discrimination," they do not allege that they were discriminated against on the basis of their sex. Even construing the pleadings in the light most favorable to them, taking the pleading as a whole, Plaintiffs do not allege that they faced discrimination on the basis of their sex. Without such allegations or other amendments, the pleading does not suffice to state a plausible claim for relief under § 1983. Counts XII and XIII are therefore dismissed with leave to amend if amendment would cure the deficiencies.

## X. Counts XIV and XV – The Plaintiffs' "Equal Protection/Age Discrimination" Claims

Counts XIV and XV purport to state equal protection claims alleging disparate treatment on the basis of the Plaintiffs' ages. (D. 17 at 33, 36). The Seventh Circuit has decided "the ADEA is not the exclusive remedy for age discrimination in employment claims"—plaintiffs may also allege an equal protection claim based on conduct that also violates the ADEA. *Levin v. Madigan*, 692 F.3d 607, 621–22 (7th Cir. 2012). "To establish a prima facie case of discrimination under the equal protection clause, [plaintiff is] required to show that he is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005).

While age is a protected class, it is not a suspect class; such a claim is reviewed under the rational basis standard. *See Gregory v. Ashcroft*, 501 U.S. 452 (1991); *Smith v. City of Chi.*, 457 F.3d 643, 650–51 (7th Cir. 2006); *Discovery House, Inc. v. Consol. City of Indianapolis*, 319 F.3d 277, 282 (7th Cir. 2003). Thus, to survive a motion to dismiss under Rule 12(b)(6), the Amended Complaint "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992).

Though the section of the Amended Complaint setting forth this cause of action does allege membership in a protected class—those over the age of 40—the remainder of the allegations in this section of the Amended Complaint fail to allege any disparate treatment on the basis of their membership in that class. Instead, Plaintiff

Brooks alleges he was constructively discharged because of his participation in the Melton investigation and because he complained of harassment and retaliation, while Plaintiff Simmons alleges his superiors intentionally targeted him and subjected him to a sham investigation resulting in his termination in violation of the CBA and personnel policies.[6] (D. 17 at 34–38). However, in another section of the Amended Complaint, the Plaintiffs allege younger, similarly situated employees were not subjected to investigation and/or termination for misconduct similar to that alleged of the Plaintiffs. *Id*. at 12–14. Taken as true, these factual allegations are sufficient to state a plausible equal protection claim.

The Court finds, in this limited situation, the allegations of similar conduct by younger employees being "swept under the rug" while the older employees—the Plaintiffs—were allegedly constructively discharged and terminated are sufficient to overcome the presumption of rationality. *See King-Cowser v. Sch. Dist. 149*, No. 07-CV-6551, 2008 WL 4104354, at *6–7 (N.D. Ill. Aug. 25, 2008). Counts XIV and XV may proceed.

## XII.  Counts XVI and XVII – Breach of Contract

Finally, both Plaintiff Brooks and Plaintiff Simmons allege a breach of the employee handbook, which they assert is a contract. Plaintiff Simmons alleges breach in the form of Defendant Pekin's failure to contribute to his insurance premiums, and

---

[6] The allegations contained in Counts XIV and XV are virtually identical to those contained in Counts XII and XIII, which the Plaintiffs hold are based in retaliation (D. 20 at 23, 24). Again, the equal protection clause generally does not proscribe retaliation. *See Gray*, 885 F.2d at 414 (affirming dismissal of a § 1983 claim alleging retaliation under Title VII rather than an equal protection claim). It is thus unclear how the facts contained in Counts XIV and XV relate to the purported equal protection claims.

Plaintiff Brooks alleges breach in the form of unpaid sick leave benefits. (D. 17 at 39–40).

To survive dismissal under Rule 12(b)(6), a plaintiff must "state a colorable breach of contract claim under Illinois law," by alleging "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 839 (7th Cir. 2010) (internal quotation marks omitted). The Defendants' primary argument concerns the first element. (D. 18 at 20–21).

"In Illinois, an employer's policy creates contractual rights only when: (1) it contains a promise clear enough that an employee would reasonably believe that an offer has been made; (2) the employer disseminates the policy to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer; and (3) the employee accepts the offer by commencing or continuing to work after learning of the policy." *Sutula-Johnson v. Office Depot, Inc.*, 893 F.3d 967, 972 (7th Cir. 2018); *see also Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 490, 505 N.E.2d 314, 318 (1987). However, "[w]hen an employer's policy states expressly that it does not create contractual rights, there simply is no promise that an employee can reasonably interpret as an offer to be bound." *Sutula-Johnson*, 893 F.3d at 972.

The employee handbook[7] here contains a clear, conspicuous disclosure stating:

---

[7] The Court finds it may consider the copy of the handbook attached to Defendants' Motion to Dismiss without transforming the Motion into one for summary judgment because the handbook is central to the Plaintiffs' claims and repeatedly referred to in the Amended Complaint. *See Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

> "The policies in this Personnel Manual are not intended to create a contract and are not an offer to enter into a contract. These policies do not establish contractual rights for employment or any employment benefit. The policies are not to be construed to constitute contractual obligations of any kind, or a contract of employment between the City of Pekin . . . and any employee."

(D. 18-2 at 4). The employee handbook "states expressly that it does not create contractual rights," so it cannot reasonably be interpreted as an offer by which to be bound. *See Sutula-Johnson*, 893 F.3d at 972. Consequently, the employee handbook does not constitute a valid, enforceable contract, and Plaintiffs' claims alleging breach of the provisions contained therein fail.

In the Amended Complaint, Plaintiffs allege that "[a]t all relevant times, Pekin maintained an employee handbook **and** was signatory to a contract containing a clear promise regarding insurance and sick leave benefits for retired employees." (D. 17 at 11) (emphasis added). In their Response, Plaintiffs again state "Pekin maintained an Employee Handbooks [sic] and was signatory to a contract containing a clear promise regarding insurance and sick leave benefits for retired employees." (D. 20 at 26). Furthermore, in their Response, Plaintiffs reference the Collective Bargaining Agreement as the basis for Defendant Simmons' alleged entitlement to retiree insurance. *Id.* Because the Court cannot determine from these pleadings whether Plaintiffs might properly allege that Pekin's contractual obligations arose from something other than the employee handbook, Counts XVI and XVII are dismissed with leave to amend, if amendment would cure the deficiency described above.

## Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss (D. 18) is GRANTED IN PART and DENIED IN PART.

IT IS HEREBY ORDERED that Counts IX, XI, XII, XIII, XVI, and XVII of the Amended Complaint (D. 17) are DISMISSED without prejudice, Count IV is DISMISSED in part with prejudice, and Count VI is DISMISSED with prejudice. Count III may proceed absent the demands for a jury trial and compensatory damages, and the remaining counts may proceed as alleged. The Plaintiffs are granted twenty-one (21) days from the entry of this Order to submit an amended complaint, if it would cure the deficiencies identified herein.

*It is so ordered.*

Entered this 9th day of August 2019.

s/ James E. Shadid
JAMES E. SHADID
United States District Judge
