## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

JOHN BROOKS and GREGORY SIMMONS, )
                                          )
          Plaintiffs, )
                                          )
     v. )     Case No. 18-cv-1334-JES-JEH
                                          )
CITY OF PEKIN, JOHN DOSSEY, )
DONALD BAXTER, SARAH NEWCOMB, )
AND JENNIFER MELTON, )
                                          )
          Defendants. )

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, JOHN BROOKS and GREGORY SIMMONS, by and through their attorneys, JULIE L. GALASSI AND DUSTIN R. JENSEN OF HASSELBERG, ROCK, BELL & KUPPLER, LLP, AND JAMES L. HAFELE OF KAVANAGH, SCULLY, SUDOW, WHITE & FREDERICK state the following for their COMPLAINT:

## PARTIES

1.      Plaintiff, John Brooks ("Brooks"), resides in Pekin, Illinois.

2.      Plaintiff, Gregory Simmons ("Simmons"), resides in Pekin, Illinois.

3.      Defendant, City of Pekin ("Pekin"), is located in Tazewell County, Illinois.

4.      Defendant, John Dossey ("Dossey"), resides in Hanover Park, Illinois.

5.      Defendant, Donald Baxter ("Baxter"), resides in Creve Coeur, Illinois.

6.      Defendant, Sarah Newcomb ("Newcomb"), resides in East Peoria, Illinois.

7.      Defendant, Jennifer Melton ("Melton") resides in Pekin, Illinois.

1

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over Counts I, II and III of this matter pursuant to Title 42 U.S.C. 12111, *et seq.*

9.    This Court has subject matter jurisdiction over Counts IV, V and XII of this matter pursuant to Title VII, 42 U.S.C. 2000e, *et seq.*

10.    This Court has subject matter jurisdiction over Counts V and VI of this matter pursuant to 29 U.S.C. 621.

11.    This Court has supplemental jurisdiction over Counts VII and XVII of this matter pursuant to 28 U.S.C. 1367.

12.    This Court has subject matter jurisdiction over Count VIII, IX, X and XI of this matter pursuant to 42 U.S.C. 1983.

13.    The Central District of Illinois is the proper venue for this matter pursuant to 28 U.S.C. 1391(b)(1) and (2), because the Defendants reside in Tazewell County and the events giving rise to Plaintiffs' claims occurred in the Central District of Illinois, Peoria Division.

14.    Brooks and Simmons received Right to Sue letters on July 2, 2018, July 27, 2018, and August 15, 2018.

## FACTUAL ALLEGATIONS

### Relationship of Parties

15.    Pekin hired Brooks as a law enforcement officer on May 26, 1995 promoting him to the rank of Lieutenant on April 15, 2012.

16.    Simmons was employed by Pekin as a law enforcement officer from October 9, 1995 to March 13, 2018.

2

17.     Melton is employed as a patrol officer with Pekin.

18.     Dossey is the Chief of the Pekin Police Department.

19.     Newcomb is employed as the Human Resources Director for Pekin.

20.     Baxter is a Deputy Chief of the Pekin Police Department.

21.     At all relevant times, Brooks and Simmons were two of the oldest police officers employed by Pekin.

22.     At all relevant times, Brooks and Simmons were over the age of 40.

### Simmons' Harassment Complaint Against Gregory Burris

23.     On December 16, 2016, Simmons filed an internal complaint with his shift supervisor, Sgt. Hutchinson, against Gregory Burris ("Burris") who was a Lieutenant and Simmons' Shift Commander.

24.     Simmons complained that during an official Pekin Police shift brief in December 2016, attended by seven police officers, Burris stated the following directly to him:

> Do you have a girlfriend?  Are you still dating Ina?  Did
> you f--k her?  (This was stated several times).  You did,
> didn't you?  She has brain damage, she is a wild child and
> she likes them young.  In the past, she has f--ked (name
> omitted) and (name omitted).

25.     Because his previous complaint had been ignored, on December 21, 2016, Simmons went to Baxter over Burris' conduct and statements during the shift brief.  Baxter serves as a Deputy Chief and was Burris' direct superior.

26.     Baxter took no action to address his friend Burris' conduct.  On December 31, 2016, Simmons then reported his complaint to the City Manager

3

which angered Chief Dossey. After the City Manager was made aware of Simmons'
complaint, Baxter took away two personal days from Burris.

27.     On January 6, 2017, Baxter told Simmons that he could not suspend a
salaried officer without pay and was uncomfortable referring Burris to the Police
and Fire Commission.

28.     Burris continued to make offensive statements to Simmons after he
complained to Baxter and the City Manager.

29.     On April 6, 2017, during another official Pekin Police Department shift
brief attended by approximately seven officers, Burris stated to Simmons: "Did you
f‑ ‑ k the Iraqi chick?"

30.     On April 7, 2017, Simmons made a complaint about Burris' offensive
conduct directly to Dossey.

31.     Following Simmons' complaint to Dossey, an investigation was
commenced regarding Burris' conduct toward Simmons. The investigation was
conducted by Deputy Chief Kaminski ("Kaminski").

32.     During the investigation, Burris repeatedly denied making any lewd or
offensive sexual statements to Simmons.

33.     Kaminski's investigation findings were that Burris had engaged in the
conduct complained of and lied during the investigation. During the investigation,
Kaminski told Simmons that all meetings and interviews with him had been
recorded.

34.     On May 1, 2017, Burris was disciplined for his above listed conduct
toward Simmons. In an agreed order entered by the Pekin Fire and Police

4

Commission, Burris was demoted to the rank of patrol officer and suspended without pay for twenty-one days. Burris received no discipline for lying during the investigation nor was the evidence that Burris lied during the investigation included in the complaint for discipline presented to the Board of Fire and Police Commissioners.

<u>Melton's False Accusation Against Simmons</u>
<u>In Response to Burris' Discipline</u>

35.     On May 5, 2017, Melton referred to Simmons as a "jackass" during an official departmental shift brief.  Baxter recommended Melton be counseled for her statement. Melton was counseled on May 22, 2017.

36.     Immediately after being counseled on May 22, 2017, Melton complained that Simmons had made inappropriate comments about her breasts on March 25, 2017, at the Pekin Steak-N-Shake restaurant.  Melton stated she was making the complaint solely because of the discipline she had received because she called Simmons a "jackass".  Notwithstanding Melton's harassment complaint, after March 25, 2017, she invited Simmons to eat lunch with her.

37.     Brooks was ordered to investigate Melton's complaint about Simmons, and thereafter counsel Simmons.

38.     Simmons adamantly denied making any comments about Melton's breasts.  Another officer who was present at the restaurant corroborated Simmons' statements.

39.     During Brooks' interview with Melton over her complaint, she never mentioned any other instances of inappropriate conduct by Simmons.

40.     Melton admitted to another Pekin officer that she was not offended by fellow officer's off-color comments and she herself engaged in conversations with fellow male officers about the operational features of various sex toys she delivered to them.

41.     Prior to Melton's first complaint, she had invited Simmons to her home while her husband was away and, on another occasion, tried to grope him. Simmons refused her advances.

### Baxter and Dossey's Biased Investigation of Melton's Unfounded Claims

42.     Brooks advised Baxter and Dossey on May 26, 2017, that he felt it was inappropriate to discipline Simmons considering the other officer's statements and asked if he should find and question a witness Melton claimed was present at the time.  Brooks was told to take no further action, the complaint from Melton against Simmons was "not a big deal" and the administration did not wish to "make it a big deal."  Brooks then advised Simmons the complaint was unfounded and closed with no further action required.

43.     Contrary to the statements made to Brooks on May 26, 2017, Baxter and/or Dossey then requested Melton to resubmit her complaint against Simmons. Melton did so on May 27, 2017.

44.     On June 6, 2017, unbeknownst to 1st shift commander Brooks, Dossey placed Simmons on administrative leave with pay.  Thereafter on July 21, 2017, Simmons was placed on unpaid administrative leave.  Baxter was placed in charge of the investigation.

6

45.     After June 6, 2017, Simmons was under formal investigation for the false allegation that he had commented about Melton's breasts on March 25, 2017, and a brand-new false allegation that he had commented about her breasts on March 3, 2017, in the presence of her husband and other officers.  Simmons was ordered, in part, by Baxter to refrain from discussing the investigation or underlying facts with other officers, to turn in his badge and ID and not set foot on city property.

46.     On June 6, 2017, Simmons called Brooks who was Simmons' immediate supervisor.  Simmons was confused as to what he was being investigated for and how could he turn in his badge and ID without violating Baxter's order to not set foot on city property.  Brooks told Simmons he would speak to Baxter about their conversation and get back with him.

47.     On June 7, 2017, Brooks was told he may be transferred to second shift temporarily because Melton was concerned Brooks would retaliate against her. Baxter said the temporary transfer was only for a few weeks because Melton had bid for a transfer to third shift.

48.     On the morning of June 8, 2017, Melton purportedly told Baxter that Brooks had been nitpicking and treating her differently.  Baxter told Brooks that Melton could provide no examples and he did not believe her.

49.     On June 8, 2017, Brooks was interrogated under oath concerning Melton's sexual harassment claims against Simmons and his earlier investigation of same.

7

50.     During the interrogation, Brooks testified, in part, that he believed Melton's claims were not true.  Melton was angry at Simmons because of Burris' demotion and the discipline Melton received after calling Simmons a jackass. Brooks testified he had been informed that Melton initiated discussions with other officers about sex and had made prior sexual advances to Simmons.  Baxter told Brooks he had said too much about Melton.

### Discriminatory Retaliation Response to Brooks' Participation in the Biased Investigation of Melton's Unfounded Complaints that Resulted in a Failure to Accommodate Brooks' Known Disability

51.     On June 9, 2017, Brooks was told he would be transferred to second shift despite Pekin's long-term knowledge that Brooks could not physically work second shift due to his severe sleep apnea condition.  Brooks was also told the transfer may not be temporary in nature.

52.     On June 16, 2017, after being told the transfer to second shift would be permanent, Brooks filed a request for an ADA accommodation because of his severe sleep apnea.  Brooks requested to remain on first shift.  Baxter denied the ADA accommodation request and told Brooks the decision was final.

53.     Pekin admitted Brooks was transferred because of his testimony during the Simmons investigation.

54.     On June 28, 2017, Brooks filed a complaint of retaliation and harassment and/or misconduct against Dossey, Baxter and Melton.

55.     Brooks was told he would not receive a transfer back to first shift notwithstanding Brooks' physician reports that first shift work was the accommodation needed for his condition.

56.     On July 11, 2017, Brooks filed a second complaint against Dossey and Baxter with Human Resources.

57.     Pekin's response to Brooks' complaint of retaliation and harassment was to call him a liar despite never once having spoken to him about his concerns.

58.     On October 18, 2017, Brooks filed a charge of discrimination based on Pekin's refusal to accommodate his disability.

59.     On November 13, 2017, Brooks notified Pekin he disputed the response to his complaint, dismissing his complaint without ever once speaking to him about it.  That same morning, Baxter told third parties that Brooks was going to be fired. Within hours, Brooks was placed on paid leave pending an internal investigation by Baxter.

60.     On March 12, 2018, Brooks filed a charge of discriminatory retaliation based upon his participation in the investigation of Melton's sexual harassment claims. Fifteen days later, on March 27, 2018, Brooks was placed on unpaid leave. Pekin failed to obtain an order from the BoFP, as required by law and the BoFPC rules, authorizing unpaid administrative leave pending a hearing in excess of 5 days.

61.     On March 29, 2018, Dossey filed a complaint with the Board of Fire and Police Commissioners seeking an order terminating Brooks' employment for being untruthful in his complaints to Human Resources, stating Dossey was a liar and allegedly violating the Personnel Records Review Act by providing Pekin's attorney copies of records accessible to Brooks and Pekin to rebut Pekin's report against Brooks.

62.     Brooks was forced to submit his retirement benefit application on July 6, 2018, as he could not financially risk the loss of insurance and other retirement benefits threatened by Pekin in the event he was terminated.

63.     Brooks was constructively discharged.

### Discriminatory Response to Simmons' Harassment Complaint and Participation in the Biased Investigation of Melton's Unfounded Complaint

64.     On July 18, 2017, Simmons was told that Dossey was going to file a complaint with the Board of Fire and Police Commissioners and request Simmons' termination of employment.

65.     On June 19, 2017, Simmons was formally interrogated by Baxter. During the interrogation, Baxter pointed to his June 6th order and asked if Simmons had spoken to Brooks about "this".  Simmons said he had not.  Seconds later he corrected his statement and said he had spoken to Brooks.  At no time did Simmons intend to deceive or mislead his superiors during this interrogation.

66.     On July 24, 2017, Simmons entered into an agreement with Pekin whereby Simmons accepted continued unpaid leave while he and Pekin attempted to negotiate a settlement.  Pekin ignored the requirement they had to obtain an order from the BoFP, as required by law and the BoFPC rules, authorizing unpaid administrative leave pending a hearing in excess of 5 days.

67.     On August 7, 2017, settlement negotiations between Simmons and Pekin terminated.

68.     On August 23, 2017, Dossey filed a complaint with the Board of Fire and Police Commissioners requesting Simmons' termination based on Melton's allegations of inappropriate statements on March 3rd and 25th, 2017, and Simmons'

purported false statement of "no" to the question about talking about "this" with Brooks.

60.     Simmons exercised his collective bargaining rights and filed a grievance asserting Dossey's complaint allegations did not meet the required "just cause" standard.  Simmons was a member of the police union.  Under Illinois law, Simmons was required to elect either arbitration or a hearing before the Board of Fire and Police Commissioners.  Participation in a hearing before the Board of Fire and Police Commissioners would constitute a waiver of arbitration.

70.     On or about January 22, 2018, Simmons filed a retaliatory sex and age discrimination charge with state and federal authorities.

71.     Notwithstanding the union and Pekin's unresolved dispute over "just cause," Simmons' demand for arbitration and Pekin's agreement to an arbitration date subsequently cancelled for scheduling reasons, Dossey proceeded with a hearing before the Board of Fire and Police Commissioners on February 21, 2018. Simmons was not present based upon his previous selection of arbitration and exculpatory evidence was not presented by Pekin.

72.     The Board of Fire and Police Commissioners terminated Simmons' employment on March 13, 2018.

### Pekin's Wrongful Denial of Retiree Health Benefits to Simmons.

73.     Pursuant to the Illinois Pension Code, Pekin "shall establish and administer a police pension fund… for the benefit of its police officers… 40 ILCS 5/3-101.

74.    Under the Code, "a police officer age 50 or more with 20 or more years of creditable service… and who is no longer in service as a police officer…" is eligible for immediate pension benefits. 40 ILCS 5/3-111.

75.    At all relevant times, Pekin was signatory to a collective bargaining agreement (the "CBA") requiring it to provide health insurance and partial payment of premiums for said insurance to "any retiree after May 1, 2010" of the Pekin Police union. Ex. 1, § 37.3 (Attached as Ex. 1 is the Agreement Between the City of Pekin and Pekin Police Benevolent Labor Committee).

76.    The CBA does not assign the term "retiree" a different meaning from its ordinary meaning in common parlance.

77.    The CBA does not establish requirements for qualifying as a "retiree" that differ from the requirements used to determine a police officer's Illinois Pension Code pension eligibility.

78.    Pekin has provided retiree health insurance benefits to every former union police officer receiving retirement benefits pursuant to 40 ILCS 5/3-111.

79.    Simmons 50th birthday occurred in October 2016 and as of March 13, 2018 Simmons had 21 years of creditable service with the Pekin Police Pension Fund.

80.    Simmons is no longer serving as a police officer.

81.    Simmons has withdrawn or been removed from his chosen vocation as a Pekin Police officer and has ceased to work.

82.    Simmons meets the requirements of a retiree under the CBA.

83.     Shortly after March 13, 2018, Simmons requested from the Pekin Police Pension Fund, the entity established pursuant to 40 ILCS 5/3-101, a service retirement application package from the Board of Trustees of the Pekin Police Pension Fund. A Board trustee thereafter contacted Lauterbach & Amen, LLP ("Lauterbach"), certified accountants who administer retirement benefits for the Board of Trustees. Simmons completed the application. The application, as completed, required, in part, Simmons date of birth, date of hire and rank and salary attached to the rank held on the last date of service.

84.     Simmons submitted his completed Pekin Police Pension Fund application form to the Board of Trustees of the Pekin Police Pension Fund. Upon information and belief, the practice of the Board of Trustees is to contact Pekin's Human Resources Department to confirm the accuracy of the applicant's age, service period, and salary and did so with Simmons' application. Thereafter, the Board of Trustees of the Pekin Police Pension Fund called a special meeting and approved Simmons' retirement application on an interim basis until the Board's next regularly scheduled meeting where the application received final approval. Simmons received notification from Lauterbach that they received notification of his retirement from the Board of the Pekin Police Pension Fund and provided him an Illinois Department of Insurance Benefit Calculator Report reflecting his "Retired Date" of March 13, 2018, (the same date as the date of the decision of the Fire and Police Commission terminating Simmons) and "Effective Date of Benefit" of March 14, 2018. (Attached as Exhibit 2 is the Lauterbach correspondence and Report.)

85.     Pekin refuses to provide retiree health insurance benefits to Simmons as required by the collective bargaining agreement.

86.     Upon information and belief, Simmons is the only police officer who was 50 years or older and had creditable service with the Pekin Police Pension Fund of 20 years or more when he ceased working for Pekin to not receive retirement health insurance benefits under the CBA.

87.     The City of Pekin Health, Dental and Disability Benefit Plan defines an Eligible Retired Employee as a former employee retired from employment… who as a result of services performed with the Employer, retired under the Police… retirement plan. (Attached as Exhibit 3 is the Pekin Health Benefit Plan.)

88.     Brooks and Simmons cannot apply for other full-time law enforcement positions because of law enforcement agencies maximum age requirements and Simmons is no longer certified to serve as a law enforcement officer by the State of Illinois.

<u>Similarly Situated Employees that Received Preferable Treatment<br>than Simmons and Brooks</u>

89.     Several officers employed by Pekin faced charges similar or worse than those leveled against Brooks and Simmons.  The following officers were younger than Brooks and Simmons and had not engaged in statutorily protected activity.

   a.     Patrol officer 1 took photos of his penis while in uniform and sent the pictures to a third party.  Patrol officer 1 was not referred to the Board of Police and Fire Commission for discipline and/or termination;

   b.     Burris was found to have lied during an internal investigation and to have made the sexually explicit comments but received no disciplinary

14

action for lying and maintained his employment despite his repeated
sexually offensive comments;

c.     Patrol officer 2 lied about contacts to the State's Attorney and later
admitted he lied. Patrol officer 2 was not referred to the Board of
Police and Fire Commission for discipline and/or termination and was
later promoted;

d.     Patrol officer 3 falsely denied using a personal hand-held cell phone
while driving a squad car. Patrol officer 3 was not referred to the
Board of Police and Fire Commission for discipline and/or termination;

e.     Patrol officer 4 illegally accessed LEADS to obtain information about
his former wife. Patrol officer 4 was not referred to the Board of Police
and Fire Commission for discipline and/or termination;

f.     Patrol officer 5 took an expensive sniper rifle from Pekin's armory,
retained it at home, and refused several orders to return it. Patrol
officer 5 was not referred to the Board of Police and Fire Commission
for discipline and/or termination;

g.     Command officer 1 illegally ordered subordinate officers to intervene in
a private personal matter outside the jurisdiction of the Pekin Police
Department. The officer who reported the unlawful order was
retaliated against. Command officer 1 was not referred to the Board of
Police and Fire Commission for discipline and/or termination;

h.     Officer 6 asked a female minor to show him naked pictures she had
taken of herself. Officer 6 viewed the naked pictures. Officer 6 was

not referred to the Board of Police and Fire Commission for discipline and/or termination;

i.    Officer 7 admitted he told racist jokes to other officers in the squad room violating Pekin's policies.  Officer 7 was not referred to the Board of Police and Fire Commission for discipline and/or termination.

j.    Pekin used Simmons admission that he made some recordings of his superiors as grounds for his dismissal even though Simmons' superiors were recording the same conversations;

k.    Melton's accusations against Simmons were false as sworn by another officer present on March 3rd and 25th, 2017.  Melton's superior had previously rated her as untruthful.  Melton was not referred to the Board of Police and Fire Commission for discipline and/or termination;

l.    On or about August 2017, Command officer 2 stated to a female subordinate officer "f _ _ k me."  Command officer 2 was not referred to the Board of Police and Fire Commission for discipline and/or termination; and

m.    Command officer 3 lied during an internal investigation as brought out by several officers' testimony.  Command officer 3 was not referred to the Board of Police and Fire Commission.

## COUNT I

### BROOKS' CLAIM OF A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT VIA FAILURE TO ACCOMMODATE 42 U.S.C. 12111, *et seq.*

90.   Brooks re-alleges and incorporates allegations 1-89 into this Count.

91.     Brooks is a qualified individual with a disability as that term is defined under the ADA.

92.     Pekin was aware of Brooks' disability.

93.     Pekin failed to accommodate Brooks' disability.

94.     The actions by Pekin and its agents described in this complaint were motivated by animus toward Brooks' disability and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, John Brooks, respectfully requests that this Court enter judgment in his favor and against Defendant, the City of Pekin, and grant the following relief:

A.     An injunction requiring Defendant to re-employ Plaintiff in the position from which he was terminated or a comparable position, or in lieu thereof award him monies equal to lost future wages and benefits;

B.     An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C.     Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D.     Compensatory damages in an amount determined at trial of this matter;

E.     An award of Plaintiff's attorney fees, including legal expenses, and costs; and

F.     Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## COUNT II

### BROOKS' CLAIM OF A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT VIA DISPARATE TREATMENT 42 U.S.C. 12111, *et seq.*

95.     Brooks re-alleges and incorporates allegations 1-89 into this Count.

96.     Brooks had a disability as that term is defined under the ADA.

97.     Brooks could perform the essential functions of his job with reasonable accommodation.

98.     Brooks suffered at least the following adverse actions because of his disability:

      a.     he was placed on involuntary unpaid leave; and

      b.     he was constructively terminated.

99.     The actions by Pekin and its agents described in this complaint were motivated by animus toward Brooks' disability and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, John Brooks, respectfully requests that this Court enter judgment in his favor and against Defendant, the City of Pekin, and grant the following relief:

A.     An injunction requiring Defendant to re-employ Plaintiff in the position from which he was terminated or a comparable position, or in lieu thereof award him monies equal to lost future wages and benefits;

B.     An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C.      Back pay that Plaintiff would have earned, together with related

monetary benefits and interest thereon;

D.      Compensatory damages in an amount determined at trial of this

matter;

E.      An award of Plaintiff's attorney fees, including legal expenses, and

costs; and

F.      Such further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

## <u>COUNT III</u>

### <u>BROOKS' CLAIM OF A VIOLATION OF THE AMERICANS WITH DISABILITIES ACT<br>VIA RETALIATION<br>42 U.S.C. 12111, *et seq.*</u>

100.    Brooks re-alleges and incorporates allegations 1-89 into this Count.

101.    Brooks engaged in statutorily protected conduct in at least the

following ways:

      a.      requesting a reasonable accommodation; and

      b.      filing an internal complaint and charge of discrimination with

            the IDHR and EEOC.

102.    Brooks suffered at least the following adverse actions because of his

statutorily protected conduct:

      a.      he was placed on involuntary leave; and

      b.      he was constructively terminated.

103.    Brooks suffered the above-described adverse actions, because he

engaged in the above-described statutorily protected activity.

104.    The actions by Pekin and its agents described in this complaint were motivated by animus toward Brooks' statutorily protected activity and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, John Brooks, respectfully requests that this Court enter judgment in his favor and against Defendant, the City of Pekin, and grant the following relief:

A.    An injunction requiring Defendant to re-employ Plaintiff in the position from which he was terminated or a comparable position, or in lieu thereof award him monies equal to lost future wages and benefits;

B.    An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C.    Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D.    An award of Plaintiff's attorney fees, including legal expenses, and costs; and

E.    Such further relief as the Court deems just and proper.

## COUNT IV

### SIMMONS' CLAIM OF A VIOLATION OF TITLE VII
### VIA RETALIATION
### 42 U.S.C. 2000e, *et seq.*

105.    Simmons re-alleges and incorporates allegations 1-89 into this Count.

106.    Simmons engaged in statutorily protected conduct in filing complaints of sexual harassment internally and with the EEOC and IDHR.

107.     Simmons suffered at least the following adverse actions because of his statutorily protected conduct:

      a.     he was placed on involuntary leave; and

      b.     he was terminated.

108.     Simmons suffered the above-described adverse actions, because he engaged in the above-described statutorily protected activity.

109.     The actions by Pekin and its agents described in this complaint were motivated by animus toward Simmons' statutorily protected conduct and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, Gregory Simmons, respectfully requests that this Court enter judgment in his favor and against Defendant, the City of Pekin, and grant the following relief:

A.     An injunction requiring Defendant to re-employ Plaintiff in the position from which he was terminated or a comparable position, or in lieu thereof award him monies equal to lost future wages and benefits;

B.     An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C.     Back pay and front pay benefits that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D.     Compensatory damages in an amount determined at trial of this matter;

E.     An award of Plaintiff's attorney fees, including legal expenses, and costs; and,

F.     Such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY.

## COUNT V

### BROOKS' CLAIM OF A VIOLATION OF THE
### AGE DISCRIMINATION IN EMPLOYMENT ACT

110.   Brooks re-alleges and incorporates allegation 1-89 into this Count.

111.   The actions described in paragraphs 1-89 of this Complaint were motivated because of animus toward Brooks age and with the intent to cause an adverse employment action against Brooks.

112.   But for the actions described in paragraphs 1-89 of this Complaint, Brooks would not have been terminated from his employment.

113.   Younger officers were not disciplined and/or terminated who engaged in the same or similar misconduct as Brooks was charged with.

114.   Pekin's willful intentional actions are the sole cause of Brooks' termination.

115.   Brooks' termination of employment is a violation of §623(a) of the ADEA, which makes it unlawful for an employer to discharge any individual because of such individual's age.

116.   As a direct and proximate result of Pekin's discrimination, Brooks has been deprived of economic benefits, including but not limited to, wages, loss of fringe benefits and loss of job opportunities.

117.   Pekin's discriminatory conduct has caused and will cause Brooks to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

22

WHEREFORE, Plaintiff, John Brooks, respectfully prays the Court to grant the following relief:

A.     An award of Plaintiff's salary from March 17, 2018 through July 7, 2018 with related monetary benefits and interest thereon and front pay;

B.     Liquidated damages as allowed by law;

C.     An award of Plaintiff's attorney fees, including legal expenses, and costs; and

D.     Such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY

## COUNT VI

### SIMMONS' CLAIM OF A VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT

118.   Simmons re-alleges and incorporates allegation 1-89 into this Count.

119.   The actions described in paragraphs 1-89 of this Complaint were motivated because of animus toward Simmons age and with the intent to cause an adverse employment action against Simmons.

120.   But for the actions described in paragraphs 1-89 of this Complaint, Simmons would not have been terminated from his employment.

121.   Younger officers were not disciplined and/or terminated who engaged in the same or similar misconduct as Simmons was charged with.

122.   Pekin's willful intentional actions are the sole cause of Simmons' termination.

23

123.   Simmons' termination of employment is a violation of §623(a) of the ADEA, which makes it unlawful for an employer to discharge any individual because of such individual's age.

124.   As a direct and proximate result of Pekin's discrimination, Simmons has been deprived of economic benefits, including but not limited to, wages, loss of fringe benefits and loss of job opportunities.

125.   Pekin's discriminatory conduct has caused and will cause Simmons to suffer substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff, Gregory Simmons, respectfully prays the Court to grant the following relief:

A.   An award of backpay with related monetary benefits and interest thereon and front pay;

B.   Liquidated damages as allowed by law;

C.   An award of Plaintiff's attorney fees, including legal expenses, and costs; and

D.   Such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY.

## COUNT VII

### SIMMONS' CLAIM OF INTENTIONAL INTERFERENCE WITH EMPLOYMENT RELATIONS AGAINST MELTON

126.   Simmons re-alleges and incorporates allegations 1-89 into this Count.

127.   Melton's statements that Simmons made comments about her breasts were false.

24

128.    Melton's false statements were intentionally made to cause damage to Simmons' law enforcement career.

129.    Melton's false statements wrongfully interfered with Simmons' employment relationship with Pekin.

130.    As a result of Melton's false statements, Simmons has suffered and will suffer loss of present and future employment, loss of reputation, as well as compensatory and financial losses.

WHEREFORE, Plaintiff, Gregory Simmons, prays that he be granted judgment in an amount in excess of $75,000.00, plus costs and for such further relief as is just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY

## COUNT VIII

### SIMMONS' CLAIM OF A VIOLATION OF HIS DUE PROCESS RIGHTS BY PEKIN

131.    Simmons re-alleges and incorporates paragraphs 1-89 into this Count.

132.    At all relevant times, Simmons was a member of the Policemen's Benevolent Labor Committee ("Union") bargaining unit.

133.    Article 37, Section 37.3 of the CBA provides, in part, that "[a]ny retiree after May 1, 2010 shall be able to continue insurance in the applicable category (employee, family, etc.), and will share equally the applicable monthly rate with the City (the employee pays 50% and the City 50%) until the employee reaches the earlier of age 65 or eligibility for Medicare or the parties agree to change this provision."

134.    Pekin refuses to pay its 50% share of Simmons' insurance premium even though Simmons is a "retiree" under the CBA and City of Pekin Health, Dental and Disability Benefit Plan.

135.    42 U.S.C. 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…42 U.S.C. 1983.

136.    The Fourteenth Amendment to the United States Constitution states that "[n]o State shall… deprive any person of life, liberty, or property, without due process of law…" U.S. Const. amend. XIV, §1.

137.    Simmons had a property interest in Pekin's payment of his insurance premiums.

138.    Pekin deprived Simmons of that interest without due process.

139.    As a direct and proximate cause of Pekin's actions, Simmons suffered financial losses and treatment for chronic medical conditions.

WHEREFORE, Plaintiff, Gregory Simmons, respectfully prays the Court to grant the following relief:

A.    Compensatory damages;

B.    Damages for emotional distress;

C.    An injunction mandating Defendant, City of Pekin, pay its 50% share of Simmons' retiree insurance premiums.

D.     An award of Plaintiff's attorney fees, including legal expenses, costs and interest; and

E.     Such further relief as the Court deems just and proper.

## PLAINTIFF DEMANDS TRIAL BY JURY

### COUNT IX

#### BROOKS' EQUAL PROTECTION CLAIM/ AGE DISCRIMINATION CLAIM AGAINST DOSSEY, BAXTER AND NEWCOMB

140.    Brooks adopts and re-alleges paragraphs 1-89 into this Count.

141.    Brooks is a member of a protective class, aged over 40 and a complainant alleging discriminatory treatment by his superiors and employer.

142.    Dossey's position of Chief of Police is the highest supervisory and/or managerial position in the administrative hierarchy of the Pekin Police Department.

143.    Baxter's position of Deputy Chief of Police is the second highest supervisory and/or managerial position in the patrol division of the Pekin Police Department.

144.    Newcomb's position of Pekin's Human Resources Director is the highest managerial position in the Department.

145.    Dossey and Baxter supervised, managed and controlled the daily and overall operations, policies and procedures and the terms and conditions of Brooks' employment.

146.    Dossey, Baxter and Newcomb were decision makers who acted under color of state law with respect to the discriminatory treatment and decisions affecting Brooks' terms and conditions of employment.

27

147.   The claims against Dossey, Baxter and Newcomb are made against them in their individual capacities.

148.   Brooks has a constitutionally protected right to equal protection under the laws as guaranteed through the Fourteenth Amendment of the United States Constitution and made enforceable through 42 U.S.C. §1983.

149.   Dossey, Baxter and Newcomb intentionally and willfully violated Brooks' constitutional right to equal protection under the law, in violation of 42 U.S.C. §1983 as shown by the following:

   a.   Dossey, Baxter and Newcomb authorized and/or initiated Brooks' transfer to second shift to force Brooks out of the department because he had concluded that Simmons should not be disciplined for Melton's allegations concerning statements at the Steak-n-Shake on March 25, 2017 and truthfully testified about his investigation and opinions during a formal interrogation and participation in a sexual harassment investigation;

   b.   Dossey, Baxter and Newcomb authorized and/or initiated a sham investigation into Brooks' internal complaint of discrimination and retaliation in order to create damaging information that would justify disciplining and later terminating Brooks' employment.  Newcomb selectively interviewed witnesses so as to exclude witnesses with information

28

corroborating Brooks' statements and altered other officers' actual statements;

c.  Dossey, Baxter and Newcomb knowingly made false statements against Brooks in order to create damaging information that would justify terminating Brooks;

d.  Dossey, Baxter and Newcomb intentionally ignored Brooks' repeated complaints of retaliation;

e.  Based on Newcomb's sham investigation, Dossey authorized and initiated termination proceedings against Brooks because he complained of discrimination and retaliation;

f.  As a result of Dossey, Baxter and Newcomb's actions, termination proceedings were initiated against Brooks over allegations that did not even merit discipline of other members of the department; and

g.  As a result of Dossey, Baxter and Newcomb's intentional actions, Brooks was illegally placed on unpaid leave despite Pekin never having placed an exempt employee on unpaid leave in the past.

150.  Dossey, Baxter and Newcomb acting under color of state law, intentionally, purposefully and willfully caused the deprivations of Brooks' constitutional rights.

151.  Dossey, Baxter and Newcomb were personally involved in the discriminatory and illegal treatment of which Brooks complains.

152.   Dossey, Baxter and Newcomb's actions and conduct directly and proximately cause Brooks' constitutional injuries, including emotional stress and strain, humiliation, loss of dignity, embarrassment and loss of reputation.

153.   Brooks' job performance was more than satisfactory and he consistently met his employer's legitimate job expectations.

WHEREFORE, based on the foregoing, John Brooks prays that judgment be entered against John Dossey, Donald Baxter and Sarah Newcomb, and the following be ordered:

A.   Judgment be entered in Brooks' favor and against John Dossey, Donald Baxter and Sarah Newcomb, in their individual capacities, for their violations of 42 U.S.C. §1983;

B.   Award Brooks actual damages suffered including lost wages and benefits;

C.   Award Brooks compensatory damages for embarrassment, anxiety and emotional distress he has suffered;

D.   Award Brooks punitive damages for Dossey, Baxter and Newcomb's violations of 42 U.S.C. §1983;

E.   Award Brooks prejudgment interest on his damages as allowed by law;

F.   Award Brooks his reasonable attorneys' fees and costs; and

G.   Grant Brooks such other and further relief as this Court deems just and equitable.

### PLAINTIFF DEMANDS TRIAL BY JURY.

## COUNT X

### SIMMONS' EQUAL PROTECTION CLAIM/AGE DISCRIMINATION CLAIM AGAINST DOSSEY, BAXTER AND NEWCOMB

154.    Simmons adopts and re-alleges paragraphs 1-89 into this Count.

155.    Simmons is a member of a protective class, aged over 40.

156.    Dossey's position of Chief of Police is the highest supervisory and/or managerial position in the administrative hierarchy of the Pekin Police Department.

157.    Baxter's position of Deputy Chief of Police is the second highest supervisory and/or managerial position in the patrol division of the Pekin Police Department.

158.    Newcomb's position of Pekin's Human Resources Director is the highest managerial position in the Department.

159.    Dossey and Baxter supervised, managed and controlled the daily and overall operations, policies and procedures and the terms and conditions of Simmons' employment.

160.    Dossey, Baxter and Newcomb were decision makers who acted under color of state law with respect to the discriminatory treatment and decisions affecting Simmons' terms and conditions of employment.

161.    The claims against Dossey, Baxter and Newcomb are made against them in their individual capacities.

162.    Simmons has a constitutionally protected right to equal protection under the laws as guaranteed through the Fourteenth Amendment of the United States Constitution and made enforceable through 42 U.S.C. §1983.

163.    Dossey, Baxter and Newcomb intentionally and willfully violated Simmons' constitutional right to equal protection under the law, in violation of 42 U.S.C. §1983 as shown by the following:

a.    On or about May 27, 2017, Dossey and Baxter requested Melton resubmit her allegation about Simmons' conduct on March 25, 2017 in order to initiate their own disciplinary proceedings against Simmons and sideline Brooks' investigation results. Dossey and Baxter ordered Brooks to terminate his investigation because he did not recommend Simmons be disciplined;

b.    Dossey and Baxter initiated disciplinary charges against Simmons without a preliminary investigation into Melton's purported claims of statements by Simmons on March 3, 2017 by Simmons' shift commander contravening departmental practice;

c.    Dossey and Baxter initiated a formal investigation against Simmons prior to receiving a verified statement from Melton and before receiving a written report by Brooks of the statements made to him by Simmons, Melton and the officer present on March 25, 2017;

d.    Newcomb intentionally ignored Simmons' sexual harassment complaints, violating Pekin's policies that such claims were to be investigated and addressed by her department;

32

e.    Dossey, Baxter and Newcomb refused to separate Burris and Simmons from working the same shift despite Simmons' stated evidence of retaliation by Burris. In contrast, Brooks' transfer to a shift he could not work due to his disability was justified because he might, without any evidence, retaliate against Melton;

f.    Dossey and Baxter proceeded with efforts to terminate Simmons through the Board of Police and Fire Commission fully aware Simmons had chosen to address the charges of misconduct with an arbitrator and could not attend a Commission hearing without waiving his previously elected right of arbitration;

g.    Baxter and Dossey withheld information to the Board of Fire and Police Commission exonerating Simmons; and

h.    Dossey and Baxter instigated charges against Simmons based on allegations never used for other Pekin officers.

164.   Dossey, Baxter and Newcomb acting under color of state law, intentionally, purposefully and willfully caused the deprivations of Simmons' constitutional rights.

165.   Dossey, Baxter and Newcomb were personally involved in the discriminatory and illegal treatment of which Simmons complains.

166.   Dossey, Baxter and Newcomb's actions and conduct directly and proximately cause Simmons' constitutional injuries, including emotional stress and strain, humiliation, loss of dignity, embarrassment and loss of reputation.

33

167.    Simmons' job performance was more than satisfactory and he consistently met his employer's legitimate job expectations.

WHEREFORE, based on the foregoing, Gregory Simmons prays that judgment be entered against John Dossey, Donald Baxter and Sarah Newcomb and the following be ordered:

A.    Judgment be entered in Simmons' favor and against John Dossey, Donald Baxter and Sarah Newcomb, in their individual capacities, for their violations of 42 U.S.C. §1983;

B.    Award Simmons actual damages suffered including lost wages and benefits;

C.    Award Simmons compensatory damages for embarrassment, anxiety and emotional distress he has suffered;

D.    Award Simmons punitive damages for Dossey, Baxter and Newcomb's violations of 42 U.S.C. §1983;

E.    Award Simmons prejudgment interest on his damages as allowed by law;

F.    Award Simmons his reasonable attorneys' fees and costs; and

G.    Grant Simmons such other and further relief as this Court deems just and equitable.

## PLAINTIFF DEMANDS TRIAL BY JURY.

## COUNT XI

### SIMMONS' BREACH OF CONTRACT CLAIM AGAINST PEKIN

168.    Simmons adopts and re-alleges paragraphs 1-89 into this Count.

169.    Pekin's CBA with the Pekin Police union promising any retiree contributions from Pekin toward health insurance was a contract.

170.    Simmons is a "retiree" under the CBA.

171.    Pekin breached its contract with Simmons when it refused to pay any portion or otherwise contribute toward Simmons' health insurance premiums.

WHEREFORE, based on the foregoing, Gregory Simmons prays that judgment be entered against Pekin and the following be ordered:

A.    Judgment be entered in Simmons' favor and against Pekin for its breach of contract;

B.    Order Pekin to pay its promised share of health insurance benefits for Simmons in accordance with the contract;

C.    Order Pekin to reimburse Simmons for Pekin's share of the premium payments he made;

D.    Award Simmons prejudgment interest on his damages as allowed by law; and

E.    Grant Simmons such other and further relief as this Court deems just and equitable.

## PLAINTIFF DEMANDS TRIAL BY JURY.

### COUNT XII

### BROOKS' CLAIM OF A VIOLATION OF TITLE VII VIA RETALIATION 42 U.S.C. 2000e, *et seq.*

172.    Brooks re-alleges and incorporates allegations 1-89 into this Count.

173.   Brooks engaged in statutorily protected conduct in filing a charge of retaliation with the EEOC.

174.   Brooks suffered at least the following adverse actions because of his statutorily protected conduct:

a.   he was placed on involuntary unpaid leave; and

b.   he was constructively terminated.

175.   Brooks suffered the above-described adverse actions, because he engaged in the above-described statutorily protected activity.

176.   The actions by Pekin and its agents described in this complaint were motivated by animus toward Brooks' statutorily protected conduct and with the intent to cause an adverse action.

WHEREFORE, Plaintiff, John Brooks, respectfully requests that this Court enter judgment in his favor and against Defendant, the City of Pekin, and grant the following relief:

A.   An injunction requiring Defendant to re-employ Plaintiff in the position from which he was terminated or a comparable position, or in lieu thereof award him monies equal to lost future wages and benefits;

B.   An injunction prohibiting Defendant from any further prohibited discrimination against Plaintiff;

C.   Back pay that Plaintiff would have earned, together with related monetary benefits and interest thereon;

D.   Compensatory damages in an amount determined at trial of this matter;

E.     An award of Plaintiff's attorney fees, including legal expenses, and

costs; and

F.     Such further relief as the Court deems just and proper.

## COUNT XIII

### BROOKS' ILLINOIS WAGE PAYMENT AND COLLECTION ACT CLAIM AGAINST PEKIN

177.     Brooks adopts and re-alleges paragraphs 1-89 into this Count.

178.     The Illinois Wage Payment and Collection Act ("IWPCA") requires Brooks

establish wages are due to him "as an employee from an employer under an

employment contract or agreement."

179.     At all relevant times, Pekin had an "agreement" with Brooks to pay Benefits as

required by the IWPCA.

180.     The IWPCA defines agreement as follows:

> "Agreement" means the manifestation of mutual assent on the part of
> two or more persons. An agreement is broader than a contract and an
> exchange of promises or any exchange is not required for an agreement
> to be in effect. An agreement may be reached by the parties without the
> formalities and accompanying legal protections of a contract and may be
> manifested by words or by any other conduct, such as past practice.
> Company policies and policies in a handbook create an agreement even
> when the handbook or policy contains a general disclaimer such as a
> provision disclaiming the handbook from being an employment contract,
> a guarantee of employment or an enforceable contract. While a
> disclaimer may preclude a contract from being in effect, it does not
> preclude an agreement by two or more persons regarding terms set forth
> in the handbook relating to compensation to which both have otherwise
> assented. An agreement exists even if it does not include a specific
> guarantee as to the duration of the agreement or even if one or either
> party reserves the right to change the terms of the agreement. 56 Ill.
> Adm. Code 300.450.

181.     Pekin's handbook promising payment of accrued sick leave benefits after

termination of employment was an Agreement pursuant to the IWPCA.

182.    Pekin violated the IWPCA when it refused to pay his accrued sick leave benefits with his final compensation after he was constructively terminated.

WHEREFORE, based on the foregoing, John Brooks prays that judgment be entered against Pekin and the following be ordered:

A.    Reimbursement of amount of sick days that Defendant should have paid;

B.    Statutory damages of 2% of the above described sum;

C.    Prejudgment and Post judgment interest on the above described sum;

D.    Costs and attorney's fees and such further relief as the Court deems just and equitable.

John Brooks and Gregory Simmons,
Plaintiffs

By:    */s/ Julie L. Galassi*
One of their attorneys

Julie L. Galassi, Esq. (ARDC #06198035)
Dustin R. Jensen, Esq. (ARDC #6306248)
Hasselberg, Rock, Bell & Kuppler LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614-5591
Ph:    (309) 688-9400
Fax:   (309) 688-9430
Email:  jgalassi@hrbklaw.com
        djenson@hrbklaw.com

James L. Hafele, Esq.
Kavanagh, Scully, Sudow, White
& Frederick, P.C.
301 S.W. Adams, Suite 700
Peoria, IL 61602
Ph:    (309) 676-1381
Fax:   (309) 676-0324
Email: jameshafele@ksswf.com

T:\JLG\Brooks and Simmons\Brooks - Simmons Federal Case\Working\Second Amended Complaint with count xiii.docx