IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOHN BROOKS and GREGORY SIMMONS,<br>      Plaintiffs,<br><br>v.<br><br>CITY OF PEKIN, *et al.*,<br>      Defendants. | Case No. 1:18-cv-01334-JES-JEH |

**Order**

Now before the Court is Defendants City of Pekin, John Dossey, Donald Baxter, Sarah Newcomb, and Jennifer Melton's Motion to Stay Proceedings as to Plaintiff Gregory Simmons and Supporting Memorandum of Law (Doc. 63). The Motion is fully briefed and for the reasons set forth below, the Defendants' Motion is DENIED.

**I**

**A**

Plaintiffs John Brooks and Gregory Simmons, previously employed police officers with the City of Pekin, Illinois, originally filed their Complaint on September 14, 2018. They subsequently filed a Second Amended Complaint (Doc. 37) on September 30, 2019 naming as Defendants the City of Pekin, Illinois, Chief of the Pekin Police Department John Dossey, Deputy Chief of the Pekin Police Department Donald Baxter, Human Resources Director for Pekin Sarah Newcomb, and patrol officer Jennifer Melton. Plaintiffs Brooks and Simmons alleged that at all relevant times, they were two of the oldest police officers employed by Pekin and were both over the age of 40.

1

To put it as succinctly as possible (and not in the Plaintiffs' exact words), they allege that it all began when Simmons made an internal harassment complaint against his shift commander Lieutenant Gregory Burris which later prompted Defendant Melton to make a false accusation against Plaintiff Simmons. Plaintiff Brooks was ordered to investigate Melton's complaints against Simmons, Brooks eventually testified he believed Melton's claims were not true, and Brooks was ultimately subjected to discriminatory retaliation in response to his participation in Defendant Baxter and Dossey's biased investigation of Melton's unfounded claims that resulted in a failure to accommodate Brooks' known disability. The Plaintiffs allege that the Defendants similarly provided a discriminatory response to Simmons' own harassment complaint and his participation in the biased investigation of Defendant Melton's unfounded complaint against him. They further allege that similarly situated employees that received preferable treatment were younger than the Plaintiffs and had not engaged in statutorily protected activity.

In separate proceedings unrelated to this federal lawsuit, Defendant Chief Dossey filed amended disciplinary charges against Simmons with the Pekin Fire and Police Commission (Commission) on February 19, 2018. The next day, Simmons filed a grievance with the City of Pekin pursuant to a collective bargaining agreement (CBA) between the City of Pekin and the Pekin Police Benevolent Labor Committee (PBLC) (Doc. 38). He requested reinstatement with a "make whole remedy." *See* Dfts' Motion Exh. 1 (Doc. 63 at pg. 14). Also on February 20, 2018, the PBLC filed a complaint in the Illinois circuit court requesting a stay of the Commission's proceedings and sought to compel grievance arbitration under the CBA pursuant to the Illinois Uniform Arbitration Act. After Simmons did not participate in the Commission's proceedings or attend the

disciplinary hearing[1], he was terminated by the Commission on March 13, 2018. On July 20, 2020, the Illinois circuit court determined that "it has not been established that the officer [Simmons] has waived his contractual right to arbitration." Dfts' Motion Exh. 2 (Doc. 63 at pgs. 16-17). Arbitration hearings with the City of Pekin were thereafter scheduled to commence on November 12, 2020.

On September 14, 2018, Plaintiffs Simmons and Brooks filed the instant federal lawsuit. Plaintiff Brooks' claims in this lawsuit include: a violation of the Americans with Disabilities Act (ADA) via failure to accommodate; a violation of the ADA via disparate treatment; a violation of the ADA via retaliation; a violation of the Age Discrimination in Employment Act (ADEA); an equal protection claim/age discrimination claim against Defendants Dossey, Baxter, and Newcomb; a violation of Title VII via retaliation; and one pursuant to the Illinois Wage Payment and Collection Act against Defendant City of Pekin. Plaintiff Simmons' claims include: a violation of Title VII via retaliation; a violation of the ADEA; intentional interference with employment relations against Defendant Melton; a violation of his due process rights by Defendant City of Pekin; an equal protection claim/age discrimination claim against Defendants Dossey, Baxter, and Newcomb; and a breach of contract claim against Defendant City of Pekin.

**B**

The Court adopted the parties' discovery plan on November 15, 2019. On October 5, 2020, the Court held a status conference regarding a discovery dispute which resulted in the Court granting leave to the Defendants to file a motion to stay discovery as to Plaintiff Simmons. In their October 19, 2020 Motion to Stay, the Defendants argue that the Illinois state court sanctioned Plaintiff Simmons'

---

[1] In the Second Amended Complaint, the Plaintiffs allege that Simmons was not present at the Commission's hearing based upon his previous selection of arbitration and that exculpatory evidence was not presented by Pekin. *See* Plfs' Second Am. Compl. (Doc. 37 at pg. 11).

upcoming arbitration, there is no disagreement that a written CBA exists between the parties, and it is self-evident that Plaintiff Simmons' termination falls within the scope of the upcoming arbitration proceedings as it was Simmons himself who requested arbitration on that very issue along with its resultant consequences. Thus, the Defendants argue that the Federal Arbitration Act is applicable to this case and requires that the litigation as to Plaintiff Simmons be stayed in its entirety in the interests of judicial economy and to preserve time and resources as his federal proceedings may very well be rendered moot in his arbitration with the City of Pekin.

In their Response (Doc. 64), the Plaintiffs argue the Federal Arbitration Act does not apply to Simmons' civil rights claims because the exhaustion doctrine does not apply in civil rights cases, he entered into no contract requiring that he arbitrate his civil rights claims (rather, only his union can arbitrate), and there is a substantial distinction between a CBA and a contract entered into by the employee with his employer in which arbitration of discrimination claims is required. The Plaintiffs therefore argue further that the Federal Arbitration Act provides no jurisdiction to impose a stay in this action. They contend a denial of the Motion to Stay will not result in a waste of litigation resources and any arbitration decision will not moot Simmons' claims.

## II

The Defendants argue the Federal Arbitration Act (FAA), 9 U.S.C. § 1, *et seq.*, applies to "this dispute." The Plaintiffs argue it does not apply to Simmons' civil rights claims. Section 2 of the FAA states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out

> of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Citing cases, the Defendants argue that the FAA governs arbitrable claims under various federal statutes including Title VII and the ADEA, and the FAA covers employment agreements that require arbitration to resolve work-related disputes. The Plaintiffs point out that here, unlike in those cases, there was no arbitration agreement in an employment contract between Plaintiff Simmons and the City of Pekin.

The problem for the Defendants in this case, in arguing that the FAA covers employment agreements that require arbitration to resolve work-related disputes, is that they fail to acknowledge that the work-related dispute in *this* case simply does not include Simmons' federal statutory claims. In the Defendants' cited cases *Gilmer*, *Tinder*, *Koveleskie*, and *Gibson*, the question to be answered was whether arbitration agreements were enforceable insofar as the plaintiffs' federal statutory claims were concerned. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 23 (1991) ("The question presented in this case is whether a claim under the Age Discrimination in Employment Act . . . can be subjected to compulsory arbitration pursuant to an arbitration agreement in a securities registration application"); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 730 (7th Cir. 2002) (considering what constituted sufficient consideration to support an agreement in Wisconsin to arbitrate between an employer and an at-will employee where the plaintiff sued her former employer for employment discrimination and retaliation under Title VII); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 362 (7th Cir. 1999) (holding that "Title VII claims can be subject to mandatory arbitration and that the parties' agreement to arbitrate is an enforceable contract"); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1129 (7th Cir. 1997) (stating "the parties debate an

important issue: whether the prerogative of litigating one's Title VII and ADA claims in federal court is the type of important right the relinquishment of which requires a knowing and voluntary waiver" and concluding that the plaintiff's promise to submit her claims to arbitration did not give rise to an enforceable contract). The "work-related" dispute in this case is on entirely different footing.

Perhaps the Defendants are aware of this, as they blur together in their brief the complaints Simmons made (and remedies sought) in his grievance and the claims he makes (and remedies he seeks) in this federal lawsuit. The Defendants argue that "it is self-evident that Plaintiff Simmons' *termination* falls with the scope of the upcoming arbitration proceedings," that he seeks "*essentially* the same remedies" in his arbitration and federal litigation, and "[a]lthough Simmons may argue that some of his claims in his pending federal litigation are non-arbitrable, there can be no question they are all intertwined to the same *outcome* he seeks to achieve through arbitration." Dfts' Motion (Doc. 63) (emphasis added). It is understandable why the Defendants focus more so on Simmons' termination as a reason to stay proceedings as to him pursuant to Section 3[2] of the FAA; the fact of his termination is really the only fact in common between the arbitration proceedings and his federal lawsuit. Simmons seeks relief in his federal lawsuit on substantively different grounds than his union does in arbitration.

The "facts" in Simmons' grievance are that Defendant Chief Dossey's three stated reasons for seeking Simmons' discharge did not amount to just cause to

---

[2] Section 3 of the FAA provides:
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

discharge Simmons. Those reasons included that Simmons supposedly lied, that he remarked about the size of a fellow officer's breasts, and that he secretly recorded conversations. Simmons' grievance indicated the "Article(s) and Section(s) of Contract violated" included Section 13.2, Article 7m, and Section 13.7. Section 13.2 provides, in part, "The Employer agrees that disciplinary action shall be imposed only for just cause . . . ." CBA (Doc. 38 at pg. 17). Article 7m explains the rights reserved to the sole discretion of the Employer include the right "To suspend, demote, discharge or take other disciplinary action against officers for just cause (according to established rules and regulations) . . . ." *Id.* at 10. Finally, Section 13.7 provides that, "The officer may elect to appeal a decision by the Fire and Police Commission either through the Courts or Arbitration, but not both." *Id.* at 18. There is not even a suggestion of Simmons' federal statutory antidiscrimination claims in the "facts" of his grievance or the provisions of the CBA listed as violated.

In his grievance, Simmons sought remedies of reinstatement with a "make whole remedy" including full back pay with reimbursement for all increased health care expenses, all missed pension contributions, reimbursement for all missed benefit leave time, and removal of all mention of discharge from all of his personnel files. Dfts' Motion Exh. 1 (Doc. 63 at pg. 14). In his federal lawsuit, Simmons seeks an injunction prohibiting Defendant City of Pekin from further prohibited discrimination, back pay and front pay, compensatory damages, attorney fees and costs, liquidated damages, damages for emotional distress, actual damages, punitive damages, and prejudgment interest. As the Plaintiffs argue, an arbitration decision in his favor would not resolve his federal statutory claims and would only reduce his available damages, not eliminate them.

The crux of Plaintiff Simmons' arbitration proceedings (*his union challenging his termination as done in violation of the CBA*) is so distinctly different from the

crux of his federal lawsuit (Simmons himself challenging others' conduct not mentioned in his grievance as a violation of federal law). Thus, it would be inappropriate to find the FAA governs in this case as to Plaintiff Simmons' claims. The Defendants' retort that it is a "blatant misrepresentation for . . . Simmons . . . to assert he is 'not a party to [the arbitration between the PBLC and City of Pekin]'" does nothing to salvage their position. *See* Dfts' Reply (Doc. 68 at pg. 2). Supreme Court precedent considering arbitration agreements in CBAs further impels the Court to reject the Defendants' argument for a stay pursuant to the FAA. While the Supreme Court has explained that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative," the Court has also required that "an agreement to arbitrate statutory antidiscrimination claims be 'explicitly stated' in a collective-bargaining agreement." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258 (2009). A "union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination" must be "clear and unmistakable." *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 80 (1998).

Here, the Defendants make no showing that the CBA in this case contains a clear and unmistakable waiver of Plaintiff Simmons' rights to a judicial forum for his federal claims of employment discrimination. *See Wright*, 525 U.S. at 79 ("Not only is petitioner's statutory claim [arising under the ADA] *not subject to a presumption of arbitrability*; we think any CBA requirement to arbitrate it must be particularly clear") (emphasis added). Without that showing, the Court does not, as the Supreme Court explained in *Wright*, reach the question whether such a waiver would be enforceable. *Id*. at 82. These unanswered questions preclude the Court from finding the FAA governs in this case.

## III

Practical considerations further convince the Court that it is inappropriate for the Court to exercise its discretion pursuant to Federal Rule of Civil Procedure 26 to stay proceedings as to Plaintiff Simmons. *See* FED. R. CIV. P. 26(c) (providing in relevant part that the "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"); *and Methodist Health Servs. Corp. v. OSF Healthcare System*, No. 13-1054, 2014 WL 1797674, at *1 (C.D. Ill. May 6, 2014) (explaining that whether a stay should be granted is determined by the facts of a particular case). The Defendants say they have no desire to dedicate or duplicate substantial time and effort to discovery in this case where Simmons' claims may be rendered moot by the concurrent arbitration proceedings. There are a few problems with the Defendants' argument that they wish to avoid duplication in this case.

First, the Defendants contend that the parties and arbitrator are restricted to the "appellate record" in arbitration such that Simmons may not now engage in discovery for purposes of arbitration. If Plaintiff Simmons will be unable to engage in discovery for purposes of arbitration, where is the duplication in efforts (in terms of discovery) there and in this federal lawsuit? As for the Defendants' argument that Simmons' discovery requests in this case constitute a "backdoor" attempt to obtain documents and testimony through the federal litigation to be used in the arbitration, that is not this Court's concern. Certainly, it will be for the arbitrator to control what evidence can and cannot and does and does not come in as part of those separate proceedings.

Second, the Defendants argue for a stay as to Simmons to avoid inconsistent rulings in arbitration and this federal litigation. Painting with a broad brush, the Defendants say Plaintiff Simmons' claims in his arbitration proceedings and federal litigation are "not separate and distinct." The Court explained, *supra*, that

9

the issues to be arbitrated are substantively different than those to be litigated in this federal lawsuit. The mere fact of Simmons' termination as the common fact shared between the arbitration proceedings and Simmons' federal litigation does not render those two *without* separation or distinction. Moreover, the Court further explained that the possible remedies are not one and the same, as Simmons may be entitled to additional relief in his federal litigation than he may be in arbitration. Those differences in both the claims made and the remedies sought/available foreclose the Defendants' arguments as to inconsistent rulings. Those differences preclude the Court from finding there is a risk of duplication in discovery. It appears rather obvious to the Court that instead of preserving time and resources by staying proceedings in this case as to Simmons, a stay would simply postpone the expenditure of such things until a later time (namely, after arbitration concludes). This is especially so if, as the Defendants argue, Simmons is not entitled to discovery for purposes of arbitration or is extremely limited in what he can present in support of the claims he presents in arbitration. Whether Simmons wins or loses in arbitration, there will still be plenty of issues remaining in the federal litigation such that the interests of judicial economy will not be advanced by a stay in that litigation in the interim.[3]

      Finally, Simmons' claims are so intertwined with Brooks' such that no benefit can be gained by staying this case as to Simmons but allowing it to proceed as to Brooks. The Defendants argue Simmons' federal litigation was commenced in "puzzling combination" with Plaintiff Brooks' claims though their allegations share no factual similarity except they share the same counsel. The allegations of the Second Amended Complaint show exactly how their claims are intertwined;

---

[3] The Plaintiffs say that in the event the arbitrator determines the allegations against Simmons were just cause to terminate him, Simmons' remaining claims – except for his claim against Melton – would remain viable. Plf's Resp. (Doc. 65 at pgs. 8-9).

as the Plaintiffs concisely put it, there is no viable way to conduct discovery into Brooks' investigation of Simmons without talking about the accusations against Simmons himself. Thus, where is the saving in resources if similar discovery will be sought with regard to Brooks' claims? In fact, a stay as to only Simmons may cause discovery disputes to arise between Brooks and the Defendants. The Defendants could argue to the Court that a discovery request by Brooks pertains too closely to Simmons such that the Defendants are not required to respond. Such a dispute – which would not arise if there were no stay as to Simmons – would require resources to resolve.[4]

A stay of proceedings as to Plaintiff Simmons is not warranted in this case.

### IV

For the reasons set forth above, Defendants City of Pekin, John Dossey, Donald Baxter, Sarah Newcomb, and Jennifer Melton's Motion to Stay Proceedings as to Plaintiff Gregory Simmons (Doc. 63) is DENIED. As the Court explained during the October 5, 2020 status conference, if disputes remain now that the Court has denied the Defendants' Motion to Stay, the Plaintiffs are given leave to file a motion to compel.

*It is so ordered.*

Entered on December 16, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE

---

[4] Whether the results of arbitration will have any preclusive effect in this Court has not been addressed by parties and so the Court does not consider the question.

11