UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| JOHN BROOKS and GREGORY SIMMONS, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:18 CV 1334 |
| vs. | ) ) | **ORAL ARGUMENT REQUESTED** |
| CITY OF PEKIN, JOHN DOSSEY, DONALD BAXTER, SARAH NEWCOMB, and JENNIFER MELTON, | ) ) ) ) | |
| Defendants. | ) ) | |

---

**RESPONSE AND SUPPORTING MEMORANDUM OF LAW TO
PLAINTIFFS' MOTION TO COMPEL DISCOVERY
PER LEAVE GRANTED DECEMBER 16, 2020**

---

NOW COME Defendants, CITY OF PEKIN, JOHN DOSSEY, DONALD BAXTER, SARAH NEWCOMB and JENNIFER MELTON "("Pekin Defendants"), by and through their attorneys, KINGERY DURREE WAKEMAN & O'DONNELL, ASSOC., and submit this Response and Supporting Memorandum of Law to Plaintiffs' Motion to Compel Discovery Per Leave Granted December 16, 2020.

I. <u>Overview</u>

A. **Oral Argument Requested**

Pursuant to Central District of Illinois Local Rule 7.1, Defendants request oral argument on Plaintiffs' Motion to Compel. Defendants make this request due to the sizeable scope of the 40-page Motion encompassing multiple discovery requests and the majority of which (32 pages) is a recitation of both general and specific grievances with Defendants' Objections to Plaintiffs' excessive, unnecessary Interrogatories. Defendants feel that oral argument would fully assist the Court to better understand the factual discovery issues and nuances associated with any given Interrogatory and the Objection made, in the context of Plaintiffs' claims.

Furthermore, Plaintiffs take issue with essentially all of the Objections that the Pekin Defendants been interposed to the breadth, scope, relevance and materiality of Plaintiffs' excessive, overly burdensome, and intrusive Interrogatories. Pekin and its employees, named Defendants in this matter, strenuously submit to the Court that oral argument is an absolute necessity given Plaintiffs' contentions repeatedly that numerous unrelated minor disciplinary matters, many of which occurred well before Chief Dossey was hired in October 2015 as Police Chief for Pekin, are all relevant for discovery, as Plaintiffs improperly ascribe numerous Pekin officers as "comparators," without providing any background information on the conduct at issue.

Plaintiffs' exhibit a "scorched earth" approach with their excessive discovery requests, and oral argument regarding these issues will allow counsel for the Pekin Defendants to promptly address all of the issues that Plaintiffs raise in their Motion to Compel as to Defendants' Objections to numerous improper, and overly burdensome Interrogatories and request to produce in this matter. Oral argument is necessary so that counsel for Defendants can properly and fully apprise the Court of erroneous Plaintiffs' contention that numerous unrelated minor disciplinary matters involving other Pekin police officers (or other Pekin employees generally) are relevant to the claims of alleged discrimination advanced by Plaintiffs herein.

Plaintiffs also repeatedly assert and argue that they should be entitled to disciplinary records, union contracts, and other union grievance documents that pre-date by many years, i.e. sometimes 15 or 20 years, the hiring of Pekin Police Chief John Dossey. Plaintiffs' conveniently overlook the fact that Chief Dossey (not Newcomb or Baxter) signed the disciplinary charges that are subject of Plaintiffs' alleged discrimination claims in this matter. Specifically, while his disciplinary charges were pending against him, initiated by Chief Dossey, Plaintiff John Brooks chose to retire. The disciplinary charges initiated by Chief Dossey against Plaintiff Greg

Simmons *are still pending* in the union arbitration proceeding, which was the subject of Defendants' Motion to Stay regarding Simmons' current litigation in this matter. Oral argument on Plaintiffs' Motion to Compel and Defendants' Response will allow Pekin to fully delineate to the Court why union contracts, old and irrelevant disciplinary matters, and other union grievance proceedings pre-dating Dossey's tenure as Police Chief at Pekin are improper, unnecessary, and irrelevant to the matters alleged in this case by Plaintiffs.

### B. Scope of Discovery: Relevancy and Proportionality

FRCP 26(b)(1) instructs that discovery sought must be both relevant and "proportional" to the needs of the case, "considering the importance to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the prosed discovery outweighs its likely benefit." *Buonavolanto v. LG Chem, Ltd.*, 2019 WL 8301068, at 2 (N.D. Ill. 2019); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019).

The Supreme Court has clearly articulated that relevancy in discovery should be a firmly applied concept. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). *See also* Frank Easterbrook, *Discovery is Abuse*, 69 B.U.L.Rev. 635 (1989).

With regard to proportionality, the 2015 amendments to Rule 26 emphasize, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." Fed. R. Civ. P. 26, Advis. Comm. Notes for 2015 Amendments (emphasis added); *Buonavolanto*, 2019 WL 8301068 at 2.

Furthermore, proportionality in discovery disputes requires common sense and experiential assessment. *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). The 2015 Year-End Report on the Federal Judiciary of Chief Justice

Roberts' educates that the addition of proportionality to Rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id.* (emphasis added)  The Chief Justice also noted "[t]he key here is careful and realistic assessment of actual need" that may "require the active involvement of ... the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016).

Even with a potentially credible claim, discovery can become overly burdensome.  *See, Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007) ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)(" Rule 8. . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). In managing discovery, common sense and experience should not be left at the courthouse door. *See, Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004); *Vallejo v. Amgen, Inc*., 903 F.3d 733, 744 (8th Cir. 2018); *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc*., 326 F.R.D. 171, 175 (N.D. Ill. 2018); *Paschini v. WaveCrest Payment Servs. of Americas, Inc*., 2020 WL 1911574, at 2 (S.D. Cal. 2020).

Relevant to Plaintiffs' excessive, overly burdensome discovery requests herein, as the Seventh Circuit has observed in another context: "there was enough discovery to choke a horse. Enough is enough." *See, Banos v. City of Chicago,* 398 F.3d 889, 893 (7th Cir. 2005). *Accord, Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008).[1]

---

[1] Neither Plaintiffs nor Defendants have not filed copies of Plaintiffs' extensive discovery requests and Defendants' answers and objections thereto.  However, Defendants will be happy to do so should the Court like to review these documents.

### C. Defendants Objections Were Timely Filed

The vast majority of Plaintiff's Motion to Compel focuses on Defendants' specific objections to the "First Interrogatories" serves on Defendants Pekin, Dossey, Melton, Baxter, and Newcomb. Over and over, Plaintiffs make the argument that Defendants have waived certain Objections (typically "numerosity" Objections due to Plaintiffs' proclivities to serve interrogatories containing up to nearly 30 subparts). Plaintiffs maintain Defendants Objections were not timely made and are waived pursuant to FRCP 33(a)(4).

FRCP 33(a)(1) states that interrogatories to any given party are limited to 25, including all discrete subparts. FRCP 33(b)(2) states that answers and objections to interrogatories must be "served" within 30 days.

Attached hereto, made a part hereof, and marked as **Exhibit 1** is Plaintiffs' "Certificate of Service" noting electronic delivery of the "First Interrogatories" to counsel for the five aforementioned Defendants on January 3, 2020. Attached hereto, made a part hereof, and marked as **Exhibit 2** is Defendants' "Notice of Service of Discovery Documents" noting Defendants' service of answers and responses to the First Interrogatories to counsel for Plaintiffs by U.S. mail on February 3, 2020.

The simple application of the Federal Rules of Civil Procedure to the dates at issue shows the Plaintiffs' waiver allegations are simply not true. While objections to interrogatories must be served within 30 days, FRCP 33(b)(2), the day of service does not count. Pursuant to Federal Rule of Civil Procedure 6, when a period of time is stated in days, the calculation of the deadline must "exclude the day of the event that triggers the period...." FRCP 6(a)(1)(A)

While the Plaintiffs' Certificate of Service states it was served on January 3, 2020 (Exhibit 1), that date is excluded from the deadline calculation per Rule 6--Defendants actually had 30 days from January 4, 2020 to serve their objections. 30 days from January 4, 2020 is

February 3, 2020, the exact date on which Defendants served their objections. (Exhibit 2) Defendants' objections were timely.

Furthermore, even if the Plaintiffs' improperly calculated deadline beginning on January 3, 2020 were used, that argument still fails. A 30 day period commencing on January 3, 2020 would end on February 2, 2020. February 2, 2020 was a Sunday. Any period that would end on a Saturday, Sunday, or legal holiday is continued until the next day that is not a Saturday, Sunday, or legal holiday. FRCP 6(a)(1)(C). The next such day was February 3, 2020, the exact date on which the objections were served. (Exhibit 2) Even under Plaintiffs' incorrectly calculated deadlines, the objections were still timely.

Plaintiffs failed to properly compute the time Defendants had to respond under Rule 6 by improperly including the day of service in the 30 day deadline. Plaintiffs then compounded that error by not realizing their incorrectly calculated deadline impermissibly ended on a Sunday. Regardless of how Plaintiffs reached these incorrect dates, Rules 33 and 6 are clear that Defendants objections were due on February 3, 2020 and Defendants in fact timely served their objections on February 3, 2020. Plaintiffs' waiver arguments are baseless.

Contrary to Plaintiff's assertions, Defendants answers and objections were timely served. Nonetheless, the Court has the discretion to excuse an untimely objection to an interrogatory for good cause shown. *See*, FRCP 33(b)(4). The Seventh Circuit has held that "a district court deciding whether to impose sanctions for discovery violations should consider: (1) the prejudice or surprise to the party against whom the evidence is being offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008), citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Imposing a waiver of objections as a sanction for late discovery responses is a "harsh sanction" and should be used only "for cases where the offending party was guilty of unjustified delay when responding to discovery." *Romary Assocs. v. Kibbi LLC*, 2011 U.S. Dist. LEXIS 101539 at 7 (N.D. Ind. 2011)

Courts reserve the "harshness of a waiver sanction" when the party has committed "unjustified delay in responding to discovery" and "minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver." *Ritacca v. Abbott Labs*., 203 F.R.D. 332, 335 (N.D. Ill. 2011), citing *First Sav. Bank, F.S.B. v. First Bank Sys.,* 902 F. Supp. 1356, 1361-63 (Dist. of Kansas, 1995) When a party has exemplified evidence of "foot-dragging" or a "cavalier attitude" toward following discovery rules, is waiver appropriate. *Id*. at 335.

If fact discovery is still open when an alleged discovery delay occurs, there is likely no disruption to the litigation. *See*, *1221122 Ont. Ltd. v. TCP Water Solutions, Inc*., 2011 U.S. Dist. LEXIS 67401 at 3 (concluding that there was no disruption to trial where discovery was still open for another ten months when defendants responded); *Wilson v. Kautex*, 2008 U.S. Dist. LEXIS 3365 at 8-10, (finding objections not waived when discovery was open for three months once defendants responded, there was no impending trial date, and the delay was only a matter of days).

Here, Defendants timely served their answers and objections. However, assuming, *arguendo*, the Court believes Defendants violated FRCP 33(b)(2), Plaintiffs have not been substantially prejudiced. *See, e.g. Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C. 1999) (finding that a plaintiff did not waive his right to object to discovery requests because the five or nine day delay was not prejudicial nor was there a pattern of misconduct). As well, when the

Pekin Defendants first served their Objections, Simmons' arbitration proceeding seeking his reinstatement was (and still is) pending against Pekin in another forum.

## II.     The Rule 26(a) Disclosures

Contrary to Plaintiffs' claim in the Motion to Compel, Defendants <u>have provided</u>, several months ago, their Rule 26(a) Disclosures pertaining to Plaintiff Brooks.  (*See*, **Exhibit 3**: Cover e-mail to Plaintiffs' counsel with first page of Defendants' Rule 26(a) Disclosure as to Brooks.) Defendants delayed providing their Rule 26(a) Disclosures as to Plaintiff Simmons pending outcome of Defendants' Motion to Stay the Simmons litigation which was briefed but denied.[2]

Defendants will provide Plaintiffs with their Rule 26(a) Disclosure as to Plaintiff Simmons within two weeks of the Court's ruling on certain Defendants' Objections as to Plaintiff Simmons that are raised in the instant Motion to Compel of Plaintiffs.

## III.    Requests for Documents: Overview

### A.      January 3, 2020 Initial Request for Production of Documents

In response to the Plaintiffs' extensive January 3, 2020 Requests for documents, Defendants diligently provided Plaintiffs with nearly 3,000 pages of responsive documents.

Plaintiffs now attempt to complain the production is not in compliance with FRCP 34. Plaintiffs fail to advise the Court that Defendants provided Plaintiffs with two CD-ROMS that divided the documents between those pertaining to Plaintiff Brooks and those pertaining to Plaintiff Simmons.  (*See*, **Exhibit 4**: May 8, 2020 and May 14, 2020 letters to counsel for Plaintiffs enclosing CD-ROMs).

Plaintiffs' Motion to Compel would falsely suggest Defendants simply "dumped" a bunch of documents onto the CD-ROMS in a disorganized and haphazard fashion.  This is not

---

[2] Although Plaintiffs' Motion to Stay Litigation was denied, Defendants continue to maintain that Plaintiff Simmons' ongoing arbitration may moot much of the relief requested in this case and, as well, discovery sought.

true. Each CD-ROM contains a specific, clear directory that labeled the documents by categories and subcategories. (*See*, **Exhibit 5**: Screenshots of CD-ROM directory pertaining to Plaintiff Brooks with 88 categories of labeled documents. *See*, **Exhibit 6**: Screenshots of CD-ROM directory pertaining to Plaintiff Simmons with 165 categories of documents divided among files, folders, and subfolders for easy reference.)[3]

Plaintiffs describe how they provided Defendants with their own "index description" of the documents already organized into over 250 labeled categories by Defendants. Plaintiffs would apparently desire for Defendants to use their unilaterally preferred index descriptions to as opposed to the indices created by Defendants. Nothing in FRCP requires a Defendant to utilize a Plaintiff's index in the fashion contemplated by Plaintiffs.

FRCP 34(b)(2)(E)(i) states that for electronically stored information, a party "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." If the request does not specify a form for producing eccentrically stored information, FRCP 34(b)(2)(E)(ii) allows a party to "produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms."

Plaintiffs cite to *H.C. Duke & Son v. Prism Marketing Corporation*, 2013 WL 12247811 (C.D. Ill. 2013) for the proposition that a party may "not haphazardly produce documents without reference to which request the documents are produced." Plaintiffs fail to disclose that a court order specified the manner of production of the discovery at issue in *H.C. Duke* in such a fashion that Plaintiff's counsel in *H.C. Duke* could comprehend which documents were pertinent to each response. Here, the indices, folders, and subfolders contained on the CD-ROMs (*See*, Exhibits 5 and 6) accomplish this same goal.

---

[3] As explained in Exhibit 4, the CD-ROMS constitute the "documentary production for Rule 26(a)."

FRCP 34(b)(2)(E)(i) requires documents be organized to correspond to category, nothing more. The indices contained on the CD-ROMS do precisely that. Defendants have complied with FRCP 34 with in their responses to the January 3, 2020 discovery.

**B.    July 13, 2020 Second Request for Production of Documents and "Comparators"**

In response the July 13, 2020 Second Request for Production of Documents, Defendants' counsel objected in an August 7, 2020 letter to provision of documents related to "disciplinary action and who filed a grievance to said disciplinary action within the last 20 years." Instead, Defendants only agreed to provide documents since Pekin hired Police Chief John Dossey in October 2015. *See*, **Exhibit 7**: August 7, 2020 letter to Plaintiffs' counsel.

Plaintiffs base their argument for compelling production of documents created prior to Police Chief Dossey's October 2015 hiring because they wish to engage in discovery regarding "how other employees were treated over issues of alleged misconduct." (Plaintiffs Motion, ¶10) This argument overlooks the fact that Chief Dossey (not his predecessors) made the disciplinary decisions as to Plaintiffs' misconduct. Chief Dossey did not work at the Pekin Police Department prior to his hiring as Chief in October 2015.

In sum, Plaintiffs seek information regarding grievances, arbitrations, and documents contained (supposedly or potentially) within personnel files of three selected former employees of the Pekin Police Department, that have nothing to do with Plaintiffs Brooks and Simmons (i.e. Nate Ujinski, Corey Gallup, and Rob McAtee). *See,* Plaintiffs' Motion to Compel, ¶ 87, pp. 3-4 [#73] **.** Plaintiffs' counsel believes they can unilaterally identify relevant "comparators" to Brooks and Simmons. Defendants' counsel's August 7, 2020 letter objecting to production of this information (Exhibit 7) requested an explanation as to why these three individuals have been singled out by Plaintiffs. Defendants have received no such explanation. Oral argument via

telephone will allow Defendants' counsel to explain to the court why these three officers' conduct is not relevant to that of Plaintiffs, for which discipline charges were filed by the Chief.[4]

District Court Judges "have substantial discretion to curtail the expense and intrusiveness of discovery" in limiting an adverse party's request for broad discovery of personnel files." *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.,* 328 F.3d 309, 320 (7th Cir. 2003) citing Ge*hring v. Case Corp*., 43 F.3d 340, 342 (7th Cir. 1994). "Magistrate judges and district courts have broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees." *Brunker v. Schwan's Home Serv*., 583 F.3d 1004, 1010 (7th Cir. 2009).

An employee does not need to show complete identity to a comparator, but must show "substantial similarity." *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 618 (7th Cir. 2000). In circumstances such as these, the Seventh Circuit has held that lawful comparators for a plaintiff include "employees [who] dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue.,* 219 F.3d 612, 617-18 (7th Cir. 2000*).*

As well, discovery of similarly situated comparators in an age discrimination case requires the "other employees' circumstances [must be] close enough to [plaintiff]'s to make comparisons productive." *Balderston*, 328 F.3d 309, 320 citing *Gehring*, 43 F.3d.340, 342.

---

[4] Gallup was accused of inappropriate meetings and texting with a minor, but not charged in any formal disciplinary proceedings, as he resigned from the Pekin Police Department before the investigation into his conduct could move forward. Ujinksi was terminated by the Pekin Police and Fire Commission following an incident in which he struck a handcuffed minor suspect in the back of a police vehicle; the Pekin disciplinary charges filed against Brooks and Simmons did not pertain to the "use of force." McAtee resigned several years before Dossey was hired, and before the Police Department internal investigation was performed; he was not charged before the Police and Fire Commission.

[4] Plaintiffs speciously claim Defendants Newcomb and Baxter were working at Pekin prior to Dossey's hiring; however, it is Dossey, as Chief of Police, who makes the determination as to what specific charges are filed against Officers before the Police and Fire Commission.

Here, Defendants have simply asked for an explanation as to why Plaintiffs consider these three employees (Nate Ujinski, Corey Gallup, and Rob McAtee) to be relevant comparators as opposed to an unending "fishing expedition." Instead, Plaintiffs' Motion purports to explain why they believe Plaintiff Simmons was treated differently, but have provided no answer to the key issues as to why these three individuals are supposedly relevant comparators. (Plaintiffs Motion, ¶10). A District Court has the authority to tailor discovery to "hone in" on possible comparators who were reasonably likely to have been subject to the same rules, supervisors, and decision-making process." *Kuttner v. Zaruba,* 819 F.3d 970, 974 (7th Cir. 2016)

In their Second Supplemental Request for Production, Defendants also request labor contracts going back 20 years. Again, Defendants' counsel's August 7, 2020 letter objecting to production (Exhibit 7) queries why going back 20 years (prior to when Police Chief Dossey was first hired in October 2015) is possibly relevant, as any allegations that Chief Dossey acted in a discriminatory fashion towards Plaintiffs could only concern October 2015 moving forward.[5] There is no rationale for going back 20 years in time and, as the August 7, 2020 letter explained; Defendants properly objected on the basis of overly broad, unduly burdensome, improper, and unnecessary in scope. *See, Kuttner v. Zaruba,* 819 F.3d 970, 974-0975 (7th Cir. 2016) (affirming District Court's authorized window of time for Plaintiff to engage in "meaningful discovery" based on an Objection of overly broad and unduly burdensome.)

**C.      July 29, 2020 Third Request for Production of Documents**

Plaintiffs seek the "actual voice recordings" (not just transcripts) of persons whose statements were taken by the City of Pekin. Defendants did provide Plaintiffs with the

---

[5] Plaintiffs speciously claim Defendants Newcomb and Baxter were working at Pekin prior to Dossey's hiring; however, it is Dossey, as Chief of Police, who makes the determination as to what specific charges are filed against Officers before the Police and Fire Commission.

transcripts they requested in an organized, legible, user-friendly fashion. (See, Directories of CD-ROMS, Exhibit 5 and Exhibit 6.)

But these transcripts, transcribed accurately, are apparently not sufficient to Plaintiffs' counsel. Those audio recordings can be obtained by Pekin's counsel herein and copied, and will be later provided to Plaintiffs; however, several of these recordings are a part of the ongoing *Simmons v. Pekin* arbitration proceeding.

Plaintiffs also seek various documents related to Assistant Chief Don Baxter and Officer May Pullium, for the year 2020 (Motion to Compel, ¶¶ 15-16). Plaintiffs also seek complaints against Plaintiff Simmons by Officer Melton from January 1, 2017 to present. As to matters occurring well more than two years after Plaintiffs last worked for Pekin, such matters pertaining to Baxter and Pullium in 2020 are irrelevant, as Baxter and Pullium cannot be relevant "comparators."

Plaintiffs complain that Defendants did not object within 30 days of the Third Request for Production of Documents but make no argument for waiver. As set forth above, discovery is open, and no malice was intended by Pekin, given the Motion to Stay as to Simmons.

**IV.**    **Excessive Written Interrogatories to All Defendants**

**A.**    **Written Interrogatories vs. Deposition Testimony**

Plaintiffs take issues with a veritable litany of Defendants' Objections to Interrogatories posed to the five Defendants. First, Defendants have objected to several of these Interrogatories on the basis that some Interrogatories are more appropriate for a deposition than for written response. FRCP 26 disallows discovery that is available from some other source that is more convenient, less burdensome or less expensive. *Peach v. City of Kewanee*, 2006 U.S. Dist. LEXIS 77379 (Cen. Dist. Ill., Oct. 23, 2006). Without question, numerous Interrogatories of Plaintiffs are more appropriate for the explanatory give and take of a deposition.

13

In a sense, the excessiveness, vast scope, and hyper-specificity of many of Plaintiffs' propounded Interrogatories are a backdoor attempt to depose Defendants by written questions without the proper protections afforded by the Federal Rules of Civil Procedure. (*See*, FRCP 31(a)(1): Depositions by Written Questions: "A party may by written questions, depose any person, including a party…)

### B. Plaintiffs' Interrogatories to Pekin Defendants Exceed the Limit Imposed by Fed. R. Civ. Proc. 33(a)(1)

In fact, it would appear from Plaintiffs' excessive, overly burdensome and intrusive Interrogatories, propounded to Pekin and its four (4) Defendant employees, that Plaintiffs would prefer to conduct discovery in this matter only on paper. Federal Rules of Civil ¶Procedure 33(a)(1) imposes a limit of 25 on the number of Interrogatories that a party may propound to another party in civil litigation. For example, Plaintiffs' Interrogatory No. 1 contained *36 separate Interrogatories* by asking Pekin to separately state each fact on which it relies "in its denial of [36] paragraphs in the Second Amended Complaint." *See* Plaintiff's Motion to Compel, ¶ 19, p. 6 [#73]. Pekin served its Objections to the numerosity of this improper Interrogatory within 5-1/2 weeks of receiving Plaintiffs' Interrogatories. Plaintiffs claim the Pekin Objection is not timely by a matter of a week and a half, and seek to foist upon Pekin the burden of essentially providing extensive, improper and unnecessary, lengthy deposition answers in the form of the 36 separate Interrogatory Answers, as to only Interrogatory No. 1.

Plaintiffs' Interrogatory No. 1 alone constitutes a violation of Federal Rule 33(a)(1) because it has essentially 36 separate sub-Interrogatories; this excessive discovery request cannot be sanctioned by this Court. Furthermore, the Plaintiffs' Interrogatory also seeks extensive information that pre-dates Dossey's tenure as Pekin Police Chief. Plaintiffs claim in the Motion that "Baxter was clearly involved in disciplinary matters prior to October 2015." However, they conveniently overlook the fact that Chief Dossey signed the disciplinary charges in this matter

against Brooks and Simmons, which were presented to the Pekin Police and Fire Commission ("PFC"). It is completely specious to assert that Baxter's involvement in prior disciplinary matters warrants intrusive, overly burdensome discovery against Pekin pre-dating Dossey's tenure as Police Chief, when it was Dossey, not Baxter that made the final determination of what disciplinary charges would be submitted against Brooks and Simmons to the PFC.

Similarly, Plaintiffs' Interrogatory No. 1 directed to Dossey also was a blatant violation of Federal Rule of Civil Procedure 33(a)(1) as it contains essentially 36 separate Interrogatories, again asking Dossey to "state each fact on which [he] relies on his denial of the [36 separate] paragraphs in the Second Amended Complaint. The Interrogatories which are the subject of Plaintiffs' Interrogatory No. 1 addressing three dozen separate allegations in the Second Amended Complaint are the appropriate subject for deposition. If the Court were to sanction and authorize Plaintiffs to propound 36 separate Interrogatories in Interrogatory No. 1 alone to Pekin and to Dossey, then the Court should bar the remaining Interrogatories propounded by Plaintiffs to Pekin and Dossey, as plainly violative of the Interrogatory limit in Rule 33(a)(1). *See*, Plaintiffs' Motion to Compel, ¶ 27, p. 12 [#73] (setting forth Plaintiffs' Interrogatory No. 1 referencing 36 separate paragraphs of the Second Amended Complaint and Dossey's Objection to the 36 separate Interrogatories contained therein).

Similarly, in the Motion to Compel as directed against Baxter [#70, ¶ 64, p. 30] Plaintiffs again take issue with Baxter's Objection that Plaintiffs' Interrogatory No. 15, which is essentially identical to Plaintiffs' Interrogatory No. 1 directed to Pekin and Dossey, violated Rule 33(a)(1). In this Interrogatory directed to Baxter, Plaintiffs again ask that Baxter provide separate answers to "state each fact on which you base your denial of [30 separate] paragraphs to the Second Amended Complaint." Again, Plaintiffs attempt to utilize an excessive number of Interrogatories violative of Rule 33(a)(1) as directed against Baxter, to conduct interrogation on

paper which is more appropriately conducted in a deposition. If this Court sanctions Plaintiffs'
use of Interrogatory No. 15 directed to Baxter, i.e. authorizing 30 separate sub-Interrogatories in
this single Interrogatory, then the Court should bar Plaintiffs from further Interrogatories directed
against Baxter, which are the subject of other Objections. *See*, Motion to Compel, p. 30, ¶ 64
[#73].

The same goes for Defendant Sarah Newcomb, Pekin Human Resources Manager.
Plaintiffs' Interrogatory No. 4 essentially propounded 30 separate sub-Interrogatories to her by
asking again, like the other Pekin Defendants, to "state each fact on which you base your denial
of the factual allegations in [30] paragraphs in the Second Amended Complaint." If the Court
were to compel Newcomb to answer 30 separate sub-Interrogatories in the context of Plaintiffs'
Interrogatory No. 4, it should bar Plaintiffs from utilizing any other Interrogatories. Plaintiffs'
Interrogatory No. 4 is again violative of Federal Rule 33(a)(1) limit on the number of
Interrogatories a party may propound.

Given the excessive, overly burdensome and overly intrusive nature of Plaintiffs'
Interrogatories to the Pekin Defendants, this Court must limit the number of Interrogatories to a
reasonable number, consistent with Rule 33(a)(1). Moreover, given that Pekin Defendants
produced to Plaintiffs nearly 3,000 pages of the records pertaining to Brooks and Simmons when
the Pekin Defendants served their initial Objections and Answers to Plaintiffs' Interrogatories,
this Court should not find any waiver for a nominal, at most one-day delay in service, of the
Objections to the Interrogatories, particularly given the sheer volume of discovery material
sought by Plaintiffs and produced by the Pekin Defendants. *See,* Plaintiffs' Motion to Compel, ¶
72, p. 34 [#73]. As to all discussion of timeliness of interrogatory Answers and Objections in
this Section of Defendants' Reponse, see Section I(C), *supra*, which is again incorporated herein
by reference.

## V.    Responses to Requests for Specific Documents and Interrogatory Answers

### PLAINTIFFS' SECOND REQUEST TO PRODUCE NO. 1
### PEKIN - MOTION TO COMPEL, ¶ 8, p. 3 [#73]

Plaintiffs seek extensive information about arbitrator's decisions involving every Pekin police labor union member who was subject to disciplinary action and who filed a grievance in the last 20 years, but this is simply an improper attempt by Plaintiff Simmons to obtain "back door" discovery for his pending arbitration litigation with Pekin involving the termination of his employment.  While Pekin Defendants appreciate that this Court did not grant the Motion to Stay as to Simmons, it is inappropriate for Simmons to utilize this venue as "back door" discovery tool to generate documents or materials for use in his other litigation, in which he is not entitled to discovery "within the last 20 years."

Plaintiffs also take issue with numerous matters in dispute in the pending union arbitration grievance proceeding in Paragraph 10 of their Motion to Compel.  Again, Plaintiffs speciously claim "Baxter and Newcomb were involved with disciplinary matters prior to Dossey's hiring" but ignore the fact that Chief Dossey made a determinations as to what Pekin Police and Fire Commission charges would be initiated against Brooks and Simmons.  Neither Baxter nor Newcomb made the PFC charging determinations, nor prepared the charges against Brooks and Simmons which are at issue in this case as alleged discrimination.

### PLAINTIFFS' SECOND REQUEST NO. 2 – PEKIN

Twenty years of union contracts are absolutely irrelevant to the matters at issue that involve Chief Dossey's disciplinary charges filed with the FPC against Brooks and Simmons. Plaintiffs' scorched earth approach here is again simply a back-door effort to secure in discovery in this case documents that they cannot obtain in the pending Simmons' litigation in the arbitration proceeding.

## PLAINTIFF'S THIRD REQUEST NO. 4 –
## BAXTER MISCONDUCT 2020

After receiving this request recently from Plaintiffs' counsel regarding alleged misconduct by Baxter in 2020, Defendants' counsel promptly apprised Plaintiffs' counsel of the irrelevance of any employment matters involving Baxter, which may have occurred well more than two years after Plaintiffs' employment with Pekin ended.  It is inappropriate for Plaintiffs to assert that Baxter is a "comparator" to Plaintiffs on their alleged discrimination claims, and disciplinary matters involving Baxter which occurred long after Plaintiffs' employment with Pekin ended have no relevance or bearing as to the discrimination allegations.

The same holds true for Plaintiffs' Third Request No. 5 seeking disciplinary or misconduct allegations involving Officer May Pulliam in the year 2020.  These issues were discussed with Plaintiffs' counsel and Defendants' counsel specifically apprised Plaintiffs within a matter of two or three weeks from receiving the Third Requests for Production, of the irrelevance and immateriality of unrelated 2020 disciplinary records.[6]

## OTHER PLAINTIFFS' INTERROGATORIES TO PEKIN –
## PLAINTIFFS' INTERROGATORY NO. 2 RE: MELTON –
## PROBATION TRAINING IN 2003

In the Motion to Compel at Paragraph 20 [p. 7, #73] Plaintiffs take issue with Pekin's Objection to not providing an Answer regarding Officer Jennifer Melton's training when she was hired as a Pekin police officer *in 2003*.  Some disciplinary involving Officer Melton 2003 is referenced at page 8 of Plaintiffs' Motion to Compel; such is specious supposition to assert that something in 2003 has any relevance or materiality to the allegations involving Brooks and Simmons, and the termination of their employment with the City of Pekin 15 years later. Plaintiffs' Motion to Compel regarding this matter conveniently assumes that Chief Dossey

---

[6] At the time of his retirement in 2020, Defendant Baxter was Deputy Chief, and neither Plaintiff held such a position.

would have had some knowledge (or any knowledge) about some minor disciplinary or probationary hiring matter involving Melton 15 years prior. This aspect of the Motion to Compel is illustrative of Plaintiffs' "scorched earth," improper effort to cause Pekin Defendants to incur unnecessary litigation costs in the form of attorneys' fees in responding to ancient inquiries totally irrelevant to the subject of Plaintiffs' alleged discrimination allegations.

The same holds true for Plaintiffs' Interrogatory No. 3 [¶ 21, p. 8, #73] which concerns and decision-making regarding Melton's retention on the police force (shortly after she was hired in 2003). This discovery seeks information irrelevant and immaterial to Plaintiffs' discrimination allegations.

## PLAINTIFFS' INTERROGATORY NO. 4 – INCIDENT RE: TRAFFIC COLLISION – SGT. BARTH

This matter involves a dispute about the content of a Traffic Crash Report that involved Officer Palmer and has no relevance to nor any materiality to the misconduct that Plaintiffs Brooks or Simmons engaged in which is set forth in the disciplinary charges that Dossey filed with the FPC against them. *See*, Brooks and Simmons Disciplinary Charges, attached hereto as **Exhibit 8** and **Exhibit 9**, respectively. Plaintiffs simply deemed Barth a "comparator" regarding the dispute about the content of a Traffic Report involving Officer Palmer, but the disciplinary matters for which Brooks and Simmons were charged before the FPC were dissimilar to, and totally unrelated to any traffic accident, as was involved with Officer Palmer.

## PLAINTIFFS' INTERROGATORY NO. 14 – PEKIN

This is a general Interrogatory that addresses City of Pekin employees as a whole during the last ten years, which is totally inappropriate, overly broad and excessive, as fully set forth in Pekin's Objection to this Interrogatory found at pages 10-11 of Plaintiffs' Motion to Compel [¶ 23, #73]. City of Pekin will provide the information that it promised to provide, but again reiterates that disciplinary matters that do not pertain to Pekin police officers are totally

irrelevant and not within an appropriate scope of discovery. *See,* Section III(B), *supra*. Moreover, complaints prior to October 2015 have no relevance to the matters of alleged discrimination by Brooks and Simmons herein which pre-date Dossey's employment. Plaintiffs simply seek to engage in a fishing expedition regarding non-police employees that have nothing to do with operation of the police department or the disciplining of employees therein.

## PLAINTIFFS' INTERROGATORIES TO DOSSEY

In addition to Plaintiffs' Interrogatory No. 1, referenced above which propounded 36 separate sub-Interrogatories to Dossey, numerous other Interrogatories directed to the Chief are inappropriate for the reasons fully set forth in the Objections provided by Dossey to Plaintiffs' Interrogatories.

Dossey agrees, through counsel, to provide the Supplemental Interrogatory Answers to Interrogatories 2 and 3 pertaining to Brooks' and Simmons' suspensions. (*See* Motion to Compel, ¶ 28-29). Due to the disputed Motion to Stay, those were not yet provided.

## PLAINTIFFS' INTERROGATORY NO. 4 RE: DOSSEY RESIDENCE

This Interrogatory seeks irrelevant information, as Dossey has maintained a residence in the City of Pekin since he was hired as Police Chief, after he resigned his employment at Hanover Park. Plaintiffs claim where Dossey lives is somehow "proof of pretext with regard to Plaintiffs discipline." Whether or not Dossey maintains a residence outside of Pekin is irrelevant to the matters alleged in the Complaint. Dossey stands on this Objection.

## PLAINTIFFS' INTERROGATORY NO. 6 RE: ISU POLICE APPLICANT LATERAL

Plaintiffs request an Interrogatory answer from Dossey regarding an alleged discussion with Brooks about a female applicant. Plaintiffs' contention is specious in asserting that the alleged discussion with Dossey is "proof of a pretext with regard to Plaintiffs' discipline." Dossey stands on this Objection.

## PLAINTIFFS' INTERROGATORY NO. 8 RE:
## CLAIMS OF DOSSEY WITHHOLDING EXCULPATORY EVIDENCE

Plaintiffs again seek information pertaining to Dossey's employment at Hanover Park when some disciplinary charge may have been lodged against him, two decades or more ago. This Court previously held an oral hearing on matters involving a Subpoena that Plaintiffs propounded to Hanover Park where Dossey used to work and barred Plaintiffs' Subpoena. Plaintiffs now claim with regarding to Interrogatory No. 8 that this pertains Nathan Ujinski. Nathan Ujinski was terminated by the Pekin Police and Fire Commission on a disciplinary charge initiated by Dossey after he struck a suspect who was handcuffed in the back of a squad car. Plaintiffs' Interrogatory pertaining to Ujinski has nothing to do with Brooks or Simmons and their disciplinary charges, and is again a scorched-earth inappropriate, overly intrusive and overly burdensome effort by Plaintiffs to foist unnecessary cost, time, and effort upon Dossey and the City of Pekin for discovery in this matter.

## PLAINTIFFS' INTERROGATORY NO. 10 RE: COMPLAINTS OF DISCIPLINARY
## MATTERS – GREG BURRIS AND JENNIFER MELTON

Pekin can provide disciplinary records pertaining to Melton and Burris subject to the reasonable, relevant temporal limitations involving Dossey's tenure as Police Chief up to the point where charges were initiated against Brooks and Simmons with the PFC by Dossey regarding their misconduct. However, it is clear that Plaintiffs seek documents more than 15 years old pertaining to Melton's probationary employment, which are totally irrelevant and again another scorched-earth approach by Plaintiffs' counsel to discovery. It is unclear what time frame Plaintiffs ascribe to a disciplinary investigation involving Greg Burris.

## PLAINTIFFS' INTERROGATORY NO. 11 – QUESTION RE: OFF-DUTY CONDUCT

Plaintiffs seek some sort of overly broad, blanket assertion of policy interpretation from Dossey of an unspecific period of time. Moreover, the charges initiated by Dossey against

Brooks and Simmons, before the FPC were involving "duty related" misconduct, not off-duty conduct which is the subject of Interrogatory No. 11. This Interrogatory is inappropriate and beyond the reasonable bounds of discovery in this matter, particularly given Plaintiffs' Interrogatory No. 1 constitutes 36 separate sub-Interrogatories directed against Dossey, in violation of Federal Rule 33(a)(1). Dossey's interpretation of Pekin's disciplinary rules and procedures as respect "off-duty conduct" is irrelevant to the misconduct committed by Brooks and Simmons, which warranted the filing of disciplinary charges against them by Dossey with the PFC.

**PLAINTIFFS' INTERROGATORY NO. 12 –**
**REPORTS OF BROOKS AND SIMMONS CONCERNS RETALIATION**

This is a more appropriate subject for deposition, and the alleged "concerns over retaliation" which Brooks or Simmons submitted in writing to Pekin Police Department or Chief Dossey or personnel manager Newcomb have already been produced in discovery. Early on, Brooks generated his claims of "retaliation" after being investigated for his misconduct, in the Department internal investigation.

**PLAINTIFFS' INTERROGATORY NO. 13 – FEMALE APPLICANT –**
**PRISON GUARD AT CANTON**

Dossey stands by his Objection to this Interrogatory regarding a hiring decision. Dossey's hiring decision pertaining to a police applicant has no relevance to, and is immaterial to the claims of Brooks and Simmons of alleged discrimination against Dossey.

**PLAINTIFFS' INTERROGATORY NO. 14 –**
**DOSSEY'S SERVICE AT HANOVER PARK**

Dossey stands by the Objections set forth in the Motion to Compel at ¶ 37, p. 16 [#73]. Again, as set forth above, Dossey requests oral argument on all of the Objections that have been posed to Plaintiffs' overly broad, intrusive and unnecessarily burdensome Interrogatories.

## PLAINTIFFS' INTERROGATORY NO. 15 –
## DISCIPLINE AT HANOVER PARK OR PEKIN POLICE DEPARTMENT

Dossey stands by this Objection and reiterates to the Court that it has already barred Plaintiffs' subpoena to Hanover Park for his disciplinary records, if any did exist. Any alleged discipline of Dossey by his superiors in City of Pekin management is totally irrelevant to the claims of alleged discrimination against Dossey filed by Plaintiffs.

## PLAINTIFFS' INTERROGATORY NO. 16 RE:  LT. JEFF LITTLE REQUEST

Please refer to Pekin's prior Objection referenced in Plaintiffs' Motion at ¶39 [#73]. Plaintiff Brooks disavowed his earlier request for a disability during the course of meetings with Pekin Police Department staff, regarding his shift assignment.  How the City of Pekin accommodated Lt. Little (if at all) regarding issues pertaining to his father, who had medical problems, has nothing to do with Brooks' claims of alleged disability accommodation (which requests for accommodation he disavowed).

## PLAINTIFFS' INTERROGATORY NO. 17 RE:  SUBPOENA ISSUE
## REGARDING OFFICER CHRIS BITNER – PERSONNEL RECORDS REVIEW ACT

Dossey stands on the Objection.  This information has nothing to do with claims involving Plaintiffs herein, and there is no information contained in the Motion to Compel that illustrates how Pekin's handling of a Personnel Records Review Act issue regarding another officer is in any fashion relevant to this case.  This is again the scorched-earth, excessive and overly burdensome approach of Plaintiffs' counsel to discovery in this matter.

## PLAINTIFFS' INTERROGATORIES TO OFFICER JENNIFER MELTON
## AND HER OBJECTIONS [#73, ¶41]

Plaintiffs' take issue with various Objections of Officer Jennifer Melton to their Interrogatories.  These are discussed in the Order raised in the Motion to Compel.

## PLAINTIFFS' INTERROGATORY NO. 10

Melton stands on her Objection.  This is the appropriate subject for deposition testimony.

## PLAINTIFFS' INTERROGATORY NO. 11

Melton stands on her Objection to this Interrogatory, as this is the more appropriate subject for deposition testimony.

## PLAINTIFFS' INTERROGATORY NO. 13 – LULA ROE INFORMATION

Melton stands on her Objection. Her self-employed work is irrelevant to the allegations of Plaintiffs. There are no issues of "self-employment" involved or pertaining to Plaintiffs Brooks or Simmons in this matter, as to their disciplinary charges.

## PLAINTIFFS' INTERROGATORY NO. 14 – OUTSIDE EMPLOYMENT

Melton stands on her Objection for the reasons previously stated with regarding to Interrogatory No. 13.

## PLAINTIFFS' INTERROGATORY NO. 16 – PRIVATE EMPLOYMENT BUSINESS TASKS

Melton stands on her Objection. She asks for oral argument for the reasons stated above.

## PLAINTIFFS' INTERROGATORY NO. 17 – MELTON AND HUSBAND – SWINGERS?!

Melton stands on her Objection to this Interrogatory. Any private, sexual matters of Melton's with respect to her husband are not the proper basis for discovery in this matter, unless (implausibly) Plaintiffs can show that Chief Dossey, who made the disciplinary determinations and referrals to the Police and Fire Commission regarding Plaintiffs' misconduct, was aware of sexual propensities and sexual preferences or sexual activities of Melton with her husband in a private setting. The disciplinary charge as to Simmons pertains to his comment in a public restaurant regarding Melton's breast size.

## PLAINTIFFS' INTERROGATORY NO. 18

This Objection as to numerosity and the excessive, improper and unduly burdensome nature of this Interrogatory, which constitutes essentially 32 separate Interrogatories, has been discussed above. Melton stands on her Objection, and asks for oral argument.

## PLAINTIFFS' INTERROGATORY NO. 20 – THERESA HUMPHREYS' COMPLAINT RE: MELTON

Melton stands on her Objection. Counsel for Melton will allow limited questioning of Melton about this complaint, which was initiated by Theresa Humphreys to the Pekin Police Department in retaliation for Melton's report about Simmons commenting on the size of her breasts in a public restaurant, in front of a Pekin citizen.

## PLAINTIFFS' INTERROGATORY NO. 21 – THERESA HUMPHREYS AND SOCIAL MEDIA – MELTON

Melton stands on this Objection set forth at ¶50 of Plaintiffs' Motion to Compel. This is so irrelevant and immaterial to Plaintiffs' allegations.

## PLAINTIFFS' INTERROGATORY NO. 23 – MELTON EARLY RELEASE FROM PROBATION

In ¶51 of the Motion, Plaintiffs again take issue with matters that took place in 2003, after Melton was hired, 12 years of more prior to Dossey becoming Chief of Police. Melton stands on this Objection for the reasons set forth above pertaining to the documents sought regarding Melton's probationary training when hired. The Plaintiffs' counsel in this case has already issued a Subpoena to the Police and Fire Commission regarding their records pertaining to various officers, including Melton. Plaintiffs' efforts to suggest that Dossey had any knowledge whatsoever about Melton's 2003 field training when she was hired as a probationary officer is absolutely ridiculous and specious.

## PLAINTIFFS' INTERROGATORIES TO DON BAXTER AND OBJECTIONS

## PLAINTIFFS' INTERROGATORY NO. 1 RE: ¶89(g) OF SECOND AMENDED COMPLAINT

Baxter can elaborate through counsel on the specifics of this issue in oral argument. Baxter stands on this Objection. Plaintiffs' description of what occurred is not accurate, and the incident involving Baxter described in ¶89(g) of the Complaint involved another party in an

accident not supplying information, which prevented another police agency from completing an accident report. Another officer found the individual who had not supplied the necessary information; Baxter made contact with the person who then provided the information so that the subject accident report could be completed by the other police agency. Nothing illegal occurred and there was no retaliation. Baxter simply provided assistance because the party involved in the accident was an acquaintance of his. Plaintiffs' provide no factual information whatsoever in their Motion to Compel to describe why or how this incident in which Baxter had very limited involvement, which did not involve his work as a Pekin police officer, is somehow relevant or material to Plaintiffs' allegations.

## PLAINTIFFS' INTERROGATORY NO. 2 – ELLIOTT ACTION
## RE: BAXTER INCIDENT

Baxter stands on his Objection to this Interrogatory for the reasons spelled-out immediately above with respect to Plaintiffs' Interrogatory No. 1, and the Interrogatory Objection provided therein.

## PLAINTIFFS' INTERROGATORY NO. 3 –
## DOMESTIC DISTURBANCE COMPLAINT RE: BAXTER

Baxter stands on this Objection and can elaborate on the Objection in oral argument on the Motion. Some "domestic disturbance" that an officer has complained of regarding Baxter has no relevance and is not material to Plaintiffs' allegations. Plaintiffs fail to identify how any "domestic disturbance" involving Baxter is somehow similar to, or relevant to, the conduct that formed the basis of the disciplinary charges filed by Chief Dossey against Brooks and Simmons.

## PLAINTIFFS' INTERROGATORY NO. 5 –
## BAXTER'S THREAT OF SUICIDE

Baxter stands on his Objection to this specious, inappropriate and overly intrusive Interrogatory. Baxter can argue this point further in oral argument on this Motion, but this again illustrates the scorched-earth approach of Plaintiffs' counsel to discovery.

## PLAINTIFFS' INTERROGATORY NO. 6 –
## BAXTER TO PROVIDE ENTIRE EMPLOYMENT HISTORY
## RE: OFFICER MELTON DUTY PERFORMANCE ISSUES

This Objection is proper, and was also interposed by Defendants as to the documents sought by Plaintiffs. Baxter stands on this Interrogatory Objection. Furthermore, this Interrogatory is absolutely inappropriate, overly broad, excessive, as not in any fashion limited in time whatsoever. Moreover, as set forth above, Plaintiffs violated the Interrogatory limit set forth in Federal Rule 33, given the excessive number of Interrogatories. *See,* Plaintiffs' Interrogatory No. 15 to Baxter; Motion to Compel, ¶64 [#73, p. 30]. It is totally inappropriate in discovery for Baxter to be called upon in an Interrogatory to provide a narrative history of 17 years of Officer Melton's irrelevant employment, in that Chief Dossey was the one who made the disciplinary charging decisions before the Police and Fire Commission. Plaintiffs' can inquire in a deposition of Dossey his knowledge of Officer Melton's veracity.

## PLAINTIFFS' INTERROGATORY NO. 7 – BAXTER ALCOHOL
## COUNSELING ISSUES

Baxter stands on her Objection as set forth at ¶58 of the Motion to Compel. This is again Plaintiffs' bizarre, overly intrusive and inappropriate scorched-earth approach to discovery. Whether or not Baxter has had counseling for alcohol issues, has no relevance nor any materiality to the allegations of Plaintiffs.

## PLAINTIFFS' INTERROGATORY NO. 8 – ASSIGNMENT RE:
## BROOKS INVESTIGATION TO BAXTER

This is the appropriate subject for a deposition. Pekin has produced to Plaintiffs thousands of pages of documents pertaining to Brooks and Simmons. Those documents set forth the comprehensive investigation that was conducted pertaining to Brooks' misconduct. Of course, Brooks made complaints against Baxter, Dossey and Newcomb in retaliation for being

investigated for his own misconduct. These are the appropriate subjects for deposition testimony. Baxter stands on his Objection herein.

## PLAINTIFFS' INTERROGATORY NO. 10 – DIRECTION TO
## BROOKS RE: QUESTIONING SIMMONS

This is the appropriate subject for a deposition. Baxter stands on his Objection, including for the reasons set forth above in regard to Plaintiffs' Interrogatory No. 8, referenced in the immediately preceding paragraph of this Response. Moreover, Baxter reiterates that the number of Interrogatories Plaintiffs have propounded to him is excessive, and violates Federal Rule 33, for the reasons spelled-out fully above.

## PLAINTIFFS' INTERROGATORY NO. 11 – CONVERSATION
## WITH DOSSEY AND BROOKS

Baxter stands on this Objection, as this is an appropriate subject for deposition questioning. All of these reports on discussions that formed the basis for the disciplinary charges filed against Simmons have been produced in discovery by Pekin.

## PLAINTIFFS' INTERROGATORY NO. 12 – PERSONAL OR SEXUAL
## RELATIONSHIPS WITH BAXTER AND/OR NEWCOMB

Baxter stands on this Objection. Plaintiffs failed to identify a legitimate reason to intrude upon the private relationships of Baxter or Officer Melton or Personnel Manager Newcomb.

## PLAINTIFFS' INTERROGATORY NO. 13 – POLICY QUESTION
## RE: INACCURACY AS TERMINATION GROUNDS

Baxter stands on this Objection. This is an appropriate subject for deposition testimony regarding specific facts in specific situations. Plaintiffs' overly broad, vague and unspecific Interrogatory is not properly the subject of an Interrogatory Answer that would in any fashion be meaningful in this matter.

## PLAINTIFFS' INTERROGATORY NO. 15 – 30 SEPARATE SUBPARTS

For the reasons spelled out above, Baxter stands on this Objection. Plaintiffs have issued 30 separate sub-Interrogatories in Interrogatory No. 15 by asking Baxter to "state each fact" as to his denials to numerous paragraphs in the Second Amended Complaint. This is an appropriate subject for deposition questioning. Plaintiffs have again violated the numerosity requirement in Federal Rule 33.

## PLAINTIFFS' INTERROGATORY NO. 16 – OFFICER BARTH
## STATING F*@! OFF IN A DIFFERENT CONTEXT

This explicative uttered by Barth in a private setting in the police station has no relevance and nor materiality to Officer Greg Simmons commenting on the size of Officer Jennifer Melton's breasts in the Steak n' Shake restaurant in Pekin while a member of the public was present with Simmons and Melton. Baxter stands on this Objection.

## PLAINTIFFS' INTERROGATORY NO. 19 – REMOVAL FROM DUTY
## ISSUE PERTAINING TO LT. BURRIS

Baxter stands on this Objection, and in oral argument Plaintiffs' counsel can identify how Burris' situation is irrelevant to that of Brooks. Furthermore, in that the disciplinary decisions regarding charges to be filed before the Police and Fire Commission were made by Chief Dossey, Baxter was not even the decision-maker on the relevant disciplinary issues. This is again an overly intrusive, overly broad and improper Interrogatory, which again violates the numerosity requirement of Federal Rule 33. If the Court compels Baxter to Answer Plaintiffs' Interrogatory No. 15, which contains 30 separate Interrogatories therein, then the next of Plaintiffs' Interrogatories are excessive.

## PLAINTIFFS' INTERROGATORY NO. 20 – LT. BURRIS' ACCRUED PAY ISSUES

Baxter stands on this Objection. Plaintiffs fail to identify clearly how Burris "is a comparator" in any meaningful or explicit fashion regarding disciplinary charges filed before the Police and Fire Commission against Brooks or Simmons.

## FIRST INTERROGATOIRES TO DEFENDANT SARAH NEWCOMB

a.) <u>Interrogatory No. 1</u>: "Were you responsible for moving Brooks to second shift in 2017? If your answer is no, state who was responsible."

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. This subject calls for an explanation best suited for a deposition.

b.) <u>Interrogatory No. 2</u>: "As to complaints by Simmons, in late 2016 - early 2017, of misconduct by command officers, state: a.) The date you were informed of each incident. b.)The identity of each command officer in each incident who reported the incident to you. c.)The date the incident occurred. d.) The subject matter of each incident. e.) Describe in detail all actions taken by you in regard to each incident. f.) As to each such incident do you, or does any other City employee, have possession of any records?"

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. This subject calls for an explanation best suited for a deposition.

c.) <u>Interrogatory No. 3</u>: "Describe each and every purchase you have made of any item from Officer Melton including the date and a description of each item."

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. Items that may or may not have been purchased from Officer Melton are completely irrelevant to this case.

d.) <u>Interrogatory No. 4</u>: "State each fact on which you base your denial of the factual allegations in paragraphs 21, 22, 25, 26, 27, 42, 43, 45, 48, 50, 51, 52, 53, 54, 55, 57, 59, 60, 61, 65, 66, 69, 71, 75, 77, 78, 83, and 86 of the Second Amended Complaint."

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. Through this Interrogatory, Plaintiffs seek an end run around FRCP 33(a) and the limit to the number of interrogatories permitted by requesting approximately 30 responses disguised within one purported Interrogatory. This Interrogatory calls for answers better tailored for a deposition.

e.)     Interrogatory No. 5:    "Did you or anyone else personally interview Officers Simmons and Brooks regarding their complaints in 2016 and 2017?"

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. Plaintiffs' counsel has all transcripts for interviews of witnesses that Newcomb conducted or attended.

f.)     Interrogatory No. 6:    "Did you make a record of what was said by witnesses in the Brooks and Simmons investigations in 2016 and 2017?"

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. *See*, (e) above.

g.)     Interrogatory No. 7:    "Were you involved in any way in police officers being given free lunches at Pekin Insurance Company? If not, who was responsible for this program?

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. Any line of questioning regarding alleged "free lunches" is far and beyond the scope of the actual allegations set for in Plaintiffs' Second Amended Complaint.

h.)     Interrogatory No. 8:    "Describe the requirements for granting an accommodation for a disability."

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. This subject calls for an explanation best suited for a deposition, specific to a set of described facts.

i.)  <u>Interrogatory No. 9</u>:  "How many requests have been made by City employees for an accommodation in the last 5 years, and for each state the outcome of each request, including the name of the employee and the nature of the accommodation request."

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections.  Non-police department personnel are irrelevant.

j.)  <u>Interrogatory No. 10</u>:  "State in detail the procedure for investigating a complaint made to Human Resources by a City employee from January 1, 2016 to the present."

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections. This subject calls for an explanation best suited for a deposition as the procedure will differ based on the facts of any given case.

k.)  <u>Interrogatory No. 14</u>:  "Has the City ever suspended without pay or placed a salaried employee on unpaid leave, if so, when and why?"

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections.  Defendant Newcomb can answer as to a sworn police officers, but otherwise this Interrogatory seeks is irrelevant information and is not limited in time and scope.

j.)  <u>Interrogatory No. 16</u>:  "What claimed undue hardship would the City endure that required the denial of Brooks' accommodation request?"

Defendant Newcomb stands by her Objections to this Interrogatory and requests oral argument to further explain the rationale underlying those Objections.  This subject calls for an explanation best suited for a deposition.  Brooks, in meeting with Pekin Police Department staff, withdrew his request for any accommodation.

WHEREFORE, Defendants, CITY OF PEKIN, JOHN DOSSEY, DONALD BAXTER, SARAH NEWCOMB and JENNIFER MELTON, pray this Court deny the Motion to Compel filed by Plaintiffs, JOHN BROOKS and GREGORY SIMMONS, and pray the Court for the entry of an Order consistent with all of the foregoing set forth in this Response; Defendants respectfully state that the limited discovery items that have not been completed in this matter, within the bounds of reasonableness in discovery practice, will be promptly addressed and completed by Defendants, through counsel, after the Court rules on the ongoing, unresolved discovery dispute set forth in Plaintiffs' Motion to Compel and this Response. Defendants respectfully state that there is no valid nor legitimate basis to award Plaintiffs' reasonable attorney's fees pursuant to Rule 37, and such request should be denied, for the reasons set forth above, given applicable case law and the reasonable parameters the Court must set on discovery in this matter.

CITY OF PEKIN, JOHN DOSSEY, DONALD
BAXTER, SARAH NEWCOMB and JENNIFER
MELTON, Defendants,


By: _____/s/Philip M. O'Donnell_____
                    Philip M. O'Donnell
Philip M. O'Donnell (ARDC #6225759)
KINGERY DURREE WAKEMAN
 & O'DONNELL, ASSOC.
416 Main Street, Suite 1600
Peoria, IL  61602-1166
Phone: (309) 676-3612
Fax: (309) 676-1329
Email:  pmodonnell@kdwolaw.com
ECF Email:  philodonnell@sbcglobal.net

<u>**CERTIFICATE OF SERVICE**</u>

The hereby certify that on February 10, 2021, I electronically filed the foregoing, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Julie L. Galassi
Hasselberg Rock Bell & Kuppler, LLP
4600 N. Brandywine Drive, Suite 200
Peoria, IL 61614-5591

James L. Hafele
Kavanagh, Scully, Sudow, White
 & Frederick, P.C.
301 SW Adams Street, Suite 700
Peoria, IL 61602

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

                                                  /s/Philip M. O'Donnell
                                                    Philip M. O'Donnell
Philip M. O'Donnell (ARDC #6225759)
KINGERY DURREE WAKEMAN
 & O'DONNELL, ASSOC.
416 Main Street, Suite 1600
Peoria, IL 61602-1166
Phone: (309) 676-3612
Fax: (309) 676-1329
Email: pmodonnell@kdwolaw.com
ECF Email: philodonnell@sbcglobal.net